**KILBARR CORPORATION, formerly known as Remington Rand Corporation**

v.

**BUSINESS SYSTEMS INCORPORATED, B.V.; BSI Office Equipment Inc.**

**Business Systems Incorporated, B.V., Appellant.**

**No. 92–5249.**

United States Court of Appeals, Third Circuit.

Argued Nov. 3, 1992.

Decided March 9, 1993.

Opinion Sur Motion for Clarification April 15, 1993.

Sur Petition for Rehearing April 15, 1993.

---

James C. McConnon (argued), Joseph E. Chovanes, Frank J. Bonini, Jr., Paul & Paul; and Lewis H. Van Dusen, Jr. and Warren T. Pratt, Drinker, Biddle & Reath, Philadelphia, PA (David M. Satz, Jr., Saiber, Schlesinger, Satz & Goldstein, Newark, NJ, of counsel), for appellee.

Richard G. Menaker (argued), Paul M. Hellegers, Menaker & Herrmann, New York City and David D. Caldwell, Wolff & Samson, Roseland, NJ, for appellant.

Before: SLOVITER, Chief Judge, STAPLETON and LAY,* Circuit Judges.

* Honorable Donald P. Lay, United States Circuit Judge for the Eighth Circuit, sitting by designa-

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

This appeal involves an attempt by the Remington Rand Corporation, now known as the Kilbarr Corporation, to enforce a judgment for damages against Business Systems, Inc., B.V. (BSI B.V.), a bankrupt Dutch corporation. In *Remington Rand Corp.–Delaware v. Business Systems Inc.*, 830 F.2d 1260 (3d Cir.1987), we instructed Remington to seek recognition of the judgment from a Dutch court. Remington contends that it complied with our mandate by submitting the judgment to BSI B.V.'s trustee, who failed to act. The district court agreed and granted Remington's motion for equitable relief. BSI B.V. appeals, claiming that Remington did not follow the proper procedure for attaining recognition of a judgment under Dutch law and thus has not complied with our 1987 mandate. BSI B.V. also contends that the actions of its trustee were not the actions of the Dutch court for purposes of our mandate.

### I.

The facts underlying this long dispute are detailed in *Remington Rand Corp.–Delaware v. Business Systems Inc.*, 830 F.2d 1260 (3d Cir.1987), and will be recounted only to the extent necessary to resolve the present issue. In 1981, Remington brought an action against BSI B.V. in the United States District Court for the District of New Jersey for misappropriation of trade secrets relating to a typewriter. BSI U.S. was added as a defendant in 1983. Also in 1983, BSI B.V. entered "suspension of payments" proceedings, the Dutch equivalent of reorganization under Chapter 11 of the United States Bankruptcy Code. In 1984, the New Jersey district court found that the defendants had misappropriated trade secrets and ordered equitable relief. The court's order, in relevant part, required defendants to turn over the misappropriated information, to account for goods produced with the information, and

tion.

to hold in trust for Remington all goods and proceeds derived from the information. In 1985, the court found BSI B.V. and its Dutch trustee in civil contempt of this order and imposed sanctions.[1] A week later, BSI B.V. was declared bankrupt under Dutch law. In 1986, the New Jersey district court entered a final judgment on damages, awarding Remington $210,879,-481 (later increased to $221,409,481 under Fed.R.Civ.P. 60(a)). *See* 830 F.2d at 1262–63.

In 1987, this court decided three appeals involving this dispute.[2] Most relevant to the present matter, we vacated that portion of the district court's order imposing a constructive trust on all goods and proceeds derived from the misappropriated information to the extent the trust applied to assets outside the United States; we also vacated the finding of contempt and the award of damages. *Id.* at 1272–73. We reasoned that the imposition of the constructive trust derogated the respect due the Dutch judicial system under principles of international comity. We emphasized the seriousness of the potential conflict between the district court's order imposing a constructive trust and the proceedings in The Netherlands:

> The order purported to tie up the debtor's entire property for the ultimate benefit of Remington U.S., to the exclusion of all other creditors. The constructive trust operated directly on the property of the debtor outside the territorial limits of the United States, and extended to property under the protection of the Dutch bankruptcy laws.
>
> We have to recognize that obedience by the Dutch trustee to the constructive trust order unquestionably would compromise, if not completely prevent, per-

formance of his duties under the bankruptcy laws of The Netherlands. Although the constructive trust arrangement would provide additional security for a judgment that Remington U.S. was expected to secure, it did so at the expense of dooming any chance of rehabilitating the debtor and, in the event of liquidation, of giving priority to Remington U.S. over other BSI creditors. We believe that such an expansive and far-reaching order has the capacity to disregard the underlying reasons for comity, to interfere with the orderly administration of bankruptcy in The Netherlands, and to provoke a confrontation between the courts of the two countries. Yet we perceive no clear-cut, immediate solution to this vexing problem of private international law. Rather, the solution must come in stages.

*Id.* at 1272.

We prescribed a four step solution:

(1) Recognizing that assets of BSI located in the United States must continue under the restrictions heretofore imposed, the district court must again determine the amount of damages to which Remington U.S. is entitled. The defendants will be free to interpose the lead time valuation defense in the proceedings to determine damages.

(2) Remington must reduce any damage award it receives from the district court to judgment. It must then carry this judgment across the sea to the Dutch bankruptcy court and seek a declaratory judgment as to whether the Dutch court will properly recognize the American judgment in the claims against the bankrupt's [BSI's] estate. The declaration should state that the American judgment

---

**1.** These sanctions included a warrant for the arrest of the trustee, an injunction against transferring typewriters or proceeds from their sale, and an order that any defense based on the "head start" value of the misappropriated secrets be stricken from defendants' pleadings. 830 F.2d at 1263.

**2.** The BSI defendants and the trustee appealed from the 1986 judgment, the 1985 contempt order, and the 1984 order of equitable relief. *See Remington Rand Corp.–Delaware v. Business*

*Systems Inc.,* 830 F.2d 1256 (3d Cir.1987); *Remington Rand Corp.–Delaware v. Business Systems Inc.,* 830 F.2d 1260 (3d Cir.1987). Remington appealed from the district court's refusal to grant an injunction against two major secured creditors of BSI B.V., Amsterdam–Rotterdam Bank, N.V. and Piersen, Heldring and Piersen, N.V. *See Remington Rand Corp.–Delaware v. Business Systems Inc.,* 830 F.2d 1274 (3d Cir. 1987).

has the same force and effect as a judgment obtained in The Netherlands.

(3) If the Dutch court does not timely rule on Remington U.S.'s request or fails to accord the district court's judgment proper respect, the district court is free to reconsider a proper remedy.

(4) If the Dutch court decides to accord the district court's judgment full force and effect, then the district court, after hearing will have to decide, under concepts of equity, what, if any, portion of the constructive trust imposed on BSI assets in the United States should be forwarded to the Dutch court for distribution.

*Id.* at 1273.

We concluded by emphasizing that our extension of comity was limited by a pragmatic regard for reciprocity:

The district court should bade fealty to the doctrine of comity and recognize the Dutch bankruptcy proceedings, but only if and to the extent that the Dutch court is willing to recognize the American judgment in its proceedings. This solution would afford appropriate protection to an American creditor, yet also acknowledge the primary role of the Dutch court in equitably distributing the available funds.

*Id.*

Pursuant to step one of our mandate, the district court reinstated the original damages award, and we affirmed.[3] In an attempt to comply with step two, Remington presented the district court with what it termed a "Motion for Second Order on Mandate." This motion requested the district court's approval of a "petition for an exequatur" which Remington planned to submit to the Dutch court at Den Bosch. App. 155. The district court denied the motion, advising that the proper procedure for attaining recognition of the judgment was a matter of Dutch law to be determined by the Dutch court.

Remington submitted its petition to the Dutch court, which dismissed it in November 1990 because The Netherlands and the United States had no treaty providing for recognition of a judgment in this manner. The court advised Remington to seek recognition following the "regular channels" of Dutch law:

[T]he question as to the effect of comitas, which [Remington] should submit to the Dutch judge, following the regular channels, does not require here any further discussion. Because BSI B.V. is in a state of bankruptcy, these channels are: Either the submitting of its claim to the trustee, followed by possibly a verification dispute, or a suit against the trustee, if the claim were to concern an estate claim.

App. 246.

At this point, Remington moved the district court to reinstate equitable remedies vacated by our 1987 decision. Remington argued that the Dutch court had failed to recognize the judgment, and that the district court could therefore "reconsider a proper remedy" under step three. The district court denied the motion because Remington had neither appealed the decision of the Dutch court nor followed the procedures it suggested. Remington's Dutch counsel, S.V. Langeveld, then wrote a letter to the Dutch trustee of BSI B.V., E.J. van Dijk. The purpose of the letter, as stated therein, was "to obtain a declaration from [the Dutch court] that the American judgment has the same legal force and effect as a judgment obtained in The Netherlands." App. 336. To this end, Langeveld requested that van Dijk submit the letter and Remington's judgment to the Dutch court. van Dijk responded that the request was "far out of line with the Dutch legal system." App. 340. van Dijk re-

---

3. Before the final judgment, counsel for Remington wrote the Dutch court at Den Bosch to request assurance that the American judgment would be recognized in The Netherlands. The Dutch court replied that it was "not inconceivable" that such assurance could be given, but that "as a matter of due process" it was "necessary to rehear argument on both sides, and therefore that the Court be approached in the manner prescribed by Law." App. 155. Because Remington had not complied with the proper procedure for seeking recognition of a foreign judgment, the court did not rule on the submission.

minded Langeveld of the Dutch court's decision of November 1990 and announced his intention to alert the Hague Bar Association of Langeveld's conduct. Langeveld wrote back to reiterate the prior request. van Dijk then wrote the Bar Association, asserting that Langeveld's action was improper and that a court of the United States could not require a Dutch court to recognize the judgment. van Dijk stated that he would not respond to Langeveld's request.[4]

Remington returned to the United States and renewed its motion for the following equitable remedies: a world-wide constructive trust on products made and profits earned as a result of the misappropriation, an accounting of all such products, and an injunction against the sale or transfer of such products. The district court granted this relief. It reasoned that Remington had satisfied step two of our mandate by submitting the judgment to the trustee. van Dijk, however, had "stonewalled," pursuing disciplinary charges and refusing to present Remington's claim to the Dutch court. Turning to step three of our mandate, the district court found that van Dijk was an officer of the Dutch court. By refusing to "timely rule" on Remington's submission, the court concluded, van Dijk had repudiated the comity extended by our 1987 decision and Remington was thus entitled to seek appropriate relief. App. 112.

In the course of these proceedings in the district court, BSI B.V. submitted the declaration of W.J. Slagter, a Dutch attorney and professor of law. Slagter stated that Remington had not followed the "regular channels" of Dutch law. According to Slagter, when the Dutch court advised Remington to submit its claim to the trustee "followed by possibly a verification dispute," the court was referring to the following standard procedure: First, a claim would be filed with the trustee "for verifi-

cation." The trustee would designate the claim "correct, provisionally correct, or denied." The trustee and all creditors would then discuss the matter before a supervisory judge at a "verification meeting." If any party contested the claim, the judge would order that the dispute be heard in a litigated proceeding called a *Renvooiprocedure*. This final proceeding was the "verification dispute" referred to by the Dutch court. *See* App. 494–95.

Slagter stated further that it is the responsibility of the creditor, not the trustee, to keep the verification process moving. If a creditor submits a claim but the trustee does not respond, the creditor should seek a court order directing the trustee to reply. In summary, according to Slagter, it was Remington's responsibility to pursue verification, but Remington never initiated the process. If Remington thought it had, it should have sought an order from a supervisory judge compelling van Dijk to act. Because Remington did not do so, it was not possible for the Dutch court to rule on Remington's claim.

The district court dismissed Slagter's explanation of Dutch procedure as "unpersuasive and immaterial." App. 42. It was satisfied that van Dijk was an officer of the Dutch court, and that through his actions comity had been thwarted. This appeal followed.

▆▆▆ We must decide whether the district court properly interpreted and applied steps two and three of our 1987 mandate. The issue is one of law, subject to plenary review:

It is axiomatic that on remand for further proceedings after decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal.... A trial court must implement both the letter and spirit of the mandate, taking into account the appel-

---

**4.** van Dijk's complaint to the Bar Association eventually was dismissed. After receiving Langeveld's first letter dated May 10, 1991, van Dijk contacted the president of the Bar Association by letter of July 17, 1991. An officer of the Bar Association then wrote Langeveld to inquire about van Dijk's allegation. Langeveld respond-

ed that although the Dutch court had instructed Remington to proceed in the usual manner under Dutch law, this did not preclude a course of action "less common within the sheer Dutch setup." App. 362. By letter of November 13, 1991, the officer informed van Dijk that disciplinary measures would not be taken.

late court's opinion and the circumstances it embraces.

*Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir.1985) (citations omitted). The district court's interpretation of Dutch law is also subject to plenary review. *Mobile Marine Sales, Ltd. v. M/V Prodromos*, 776 F.2d 85 (3d Cir. 1985).[5]

## II.

The parties offer competing interpretations of the interchange between Langeveld and van Dijk. Remington makes a persuasive case that van Dijk has been unduly antagonistic. As a former bankruptcy judge, van Dijk surely was familiar with the usual verification procedure. If he had treated Remington's letter as a claim for verification, he could have helped bring the judgment before the Dutch court. Rather than facilitate the verification process, van Dijk refused to deal with Remington's counsel and sought disciplinary sanctions against him. It is understandable that Remington does not regard these actions as comporting with the spirit of comity infusing our 1987 decision.

At the same time, it is arguable that Remington has also disregarded that spirit. BSI B.V. contends that Remington purposefully avoided the normal verification process because it prefers a world-wide constructive trust to the prospect of contending with other creditors for BSI B.V.'s assets. Remington must have foreseen, BSI B.V. argues, that van Dijk would refuse to act upon the irregular request for an exequatur. Moreover, having received that refusal, it must have realized that an aggrieved party could seek review of such a refusal by the court. In BSI B.V.'s view, however, van Dijk's refusal gave Remington a colorable basis for abandoning its pursuit of relief from the Dutch courts and seeking equitable relief from the New Jersey district court.

Remington undoubtedly does prefer a world-wide constructive trust to unsecured creditor status in the bankruptcy proceeding in The Netherlands. This preference may well have affected its judgment, consciously or unconsciously, on whether its unsuccessful efforts were enough to satisfy our mandate. On the other hand, we find it difficult to justify van Dijk's behavior, and the district court may well be correct that he has deliberately "stonewalled" Remington. But even if we were to ascribe the best of motives to one side and the worst to the other, the significance of the behavior of van Dijk and Remington pales by comparison to the conflicting interests which caused us in our prior opinion to treat this problem as an extremely sensitive, important and difficult one.

Step two of our mandate directs Remington to take its judgment to the Dutch bankruptcy court and seek a determination of whether the judgment would be recognized and enforced by that court. The express purpose of this requirement is to allow the Dutch court to give the same effect to Remington's judgment as it would a judgment entered in The Netherlands, in which event reciprocity would preclude a worldwide trust for Remington's sole benefit. The issue now before us is whether the Dutch court has had a fair opportunity to do so. We conclude that it has not.

To obtain a decision of a court, in The Netherlands as in the United States, a party must observe the established procedure for submitting a claim. In its decision of November 1990, the Dutch court advised Remington of the two "regular channels" for seeking recognition of a judgment against a bankrupt company. Remington claims to have followed the first: "the submitting of its claim to the trustee, followed by possibly a verification dispute." App. 246.

According to Dutch law as presented in the declaration of Prof. Slagter, however, Remington has not complied with the proper procedure for verification of a claim.

5. "Foreign law questions are considered questions of law in the federal courts, and may be resolved by reference to any relevant information. Fed.R.Civ.P. 44.1. The court of appeals on review owes no deference to the district court's determination of foreign law, and may consider information not available to or considered by the district court." 776 F.2d at 89.

Langeveld, Remington's Dutch counsel, informed trustee van Dijk of Remington's claim by letter. But Langeveld requested that van Dijk submit Remington's judgment to the court. This request, according to Slagter's declaration, was not a claim for verification as advised by the Dutch court. Rather, it appeared to be a request that van Dijk obtain an exequatur, the relief denied in November 1990.

Remington disputes Slagter's statement that a claim for verification should be "formally filed" with the trustee; according to the declaration of Langeveld, a claim may be submitted by written statement with documentary evidence. With the sole exception of this dispute regarding the requisite formality, however, Remington does not challenge Slagter's account of the standard procedure for verification of a claim. It is thus uncontested that if Langeveld's letter to van Dijk tendered a claim for verification, as Langeveld insists, rather than sought an exequatur, as Slagter and apparently van Dijk concluded, Remington could have gone to the Dutch court to resolve the matter. Because Remington did not do so, that court has not had an opportunity to rule on Remington's claim.

There has been much debate over whether van Dijk was an officer of the Dutch court. We do not doubt that for some purposes a trustee appointed by the Dutch bankruptcy court is an officer of that court. For purposes of our mandate, however, we believe it clear that the trustee is not the equivalent of the Dutch court. As we have stressed, we earlier held that comity must be a "two-way street." 830 F.2d at 1273. Accordingly, we provided an opportunity for the courts of the sovereign nation of The Netherlands to assure the New Jersey district court that its judgment would not be ignored. The district court is entitled to have that assurance come from, or be denied by, a court of The Netherlands, not by a court appointed trustee in bankruptcy.

We therefore hold that to satisfy step two of our mandate, Remington must return to The Netherlands and follow the proper procedure for verification of a claim. Consistent with our prior ruling, pending a final determination of the Dutch courts on whether Remington's judgment will be enforced, we will vacate that portion of the district court's order imposing a constructive trust on assets beyond the territorial limits of the United States.[6]

We are mindful that this controversy has now been in litigation for over twelve years. As we have stressed, however, the issue on which this appeal focuses is a serious and sensitive one that will have ramifications far beyond the private interests of the parties before us. If Remington had but taken van Dijk's treatment of its claim letter before the supervisory judge, the present record suggests that it and the New Jersey district court would already have the answer they seek. Its failure to do so will not justify a failure on our part, in the name of expediency, to give the courts of The Netherlands a fair chance to speak.

The order of the district court dated February 25, 1992, will be reversed, and the case will be remanded for further proceedings consistent with this opinion and our 1987 mandate. The district court may reinstate that portion of the February 25, 1992, order which requires an accounting from BSI B.V.

### OPINION SUR MOTION FOR CLARIFICATION

April 15, 1993.

Plaintiff-appellee Remington Rand Corporation, now known as the Kilbarr Corpo-

---

**6.** By dissolving the world-wide constructive trust pending an answer from the Dutch courts, we do not hold that a constructive trust extending beyond this country would be inappropriate in the interim period under any circumstances. If Remington can demonstrate to the district court that it is threatened with serious, immediate, and irreparable injury in the absence of an extra-territorial equitable remedy and the countervailing equitable considerations do not make interim relief inequitable, the district court may grant such relief. Nothing that has been brought to our attention in the existing record, however, establishes an immediate threat of the kind of irreparable injury which, in the absence of an opportunity to give the required assurance, would justify the intrusion on The Netherlands' bankruptcy proceeding that would be occasioned by such relief.

**90**

ration, seeks clarification of our opinion of March 9, 1993 "with respect to the procedure it is to follow on remand, specifically with respect to its right to continue to seek the declaration of the Dutch court in the submission of its claim for verification."

The import of our opinion is that Remington Rand did not satisfy its obligations under our prior mandate by seeking a declaration of the Dutch courts in a procedural manner not recognized by those courts. Our opinion instructs that Remington must seek judicial resolution of the relevant legal issue (i.e., whether the Dutch courts will accord the New Jersey judgment full force and effect) in a procedural manner acceptable to the Dutch courts. The only accepted procedure identified in the record before us is that described in the uncontested affidavit of W.J. Slagter, a Dutch attorney and professor of law, and our opinion commends that procedure to Remington. We set forth this process in some detail at page 87 of our opinion. If this process is followed and Remington is unsuccessful in securing assurance from the Dutch courts that its judgment will be given the same force and effect as would a Dutch judgment, Remington will have complied with our earlier mandate.

Our knowledge of Dutch procedure, of course, comes from the record in this case. If there are other accepted procedures for bringing the relevant issue before the Dutch courts, Remington can comply with our earlier mandate by pursuing any one of them to a conclusion. However, since BSI B.V. has taken the position before the district court that the process endorsed by Mr. Slagter is an appropriate one, it may be prudent for Remington to pursue that process and avoid further argument about the propriety of the procedure it has elected to follow.

SUR PETITION FOR REHEARING

April 15, 1993.

Before: SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ALITO, ROTH, LEWIS, and LAY,* Circuit Judges.

* Honorable Donald P. Lay, United States Circuit Judge for the Eighth Circuit, sitting by designa-

The petition for rehearing filed by appellee in the above-entitled case having been submitted to the judges who participated in the decision of this Court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.