# BINGHAM *v.* BRADLEY, UNITED STATES MARSHAL FOR THE NORTHERN DISTRICT OF ILLINOIS,

## APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 592.  Submitted April 4, 1916.—Decided June 5, 1916.

This court will not presume that the demanding government will suffer a person surrendered pursuant to treaties of 1842 and 1889, with Great Britain to be tried for any offense other than that for which he is surrendered.

Where the commissioner had jurisdiction, the offense is within the treaty, and if he acts upon competent and adequate evidence, his finding cannot be reversed on *habeas corpus.*

One of the objects of § 5271, Rev. Stat., providing for admission in evidence in extradition proceedings of properly authenticated copies of depositions and proceedings, is to obviate the necessity of confronting the accused with the witnesses against him; and neither that section, nor Article X of the Treaty of 1842, should be so construed as to require the demanding government to send its citizens to the country where the fugitive is found to institute legal proceedings: such a construction would defeat the object of the treaty.

A fair observance of the extradition treaties with Great Britain requires in this case that the accused be surrendered, all the objections being technical; and, as the order was made by a commissioner having jurisdiction, on evidence furnishing reasonable ground for belief that the accused had committed a crime in Canada which is an offense within the treaty both there and in Illinois where he was found, it should be affirmed.

THE facts, which involve the validity of an order of an United States Commissioner holding a person for extradition under the Treaties of 1842 and 1889 with Great Britain, are stated in the opinion.

*Mr. William Dillon* for appellant.

*Mr. Benjamin S. Minor, Mr. Almon W. Bulkley, Mr. Clair E. More, Mr. Hugh B. Rowland* and *Mr. Colley W. Bell* for appellee.

MR. JUSTICE PITNEY delivered the opinion of the court.

This is an appeal from a final order of the District Court denying an application for a writ of *habeas corpus* in an extradition case. The facts are to be gathered from the petition for the writ and the exhibits therein referred to and made a part of it, which include a sworn complaint by the British Consul General at Chicago, applying on behalf of the Government of the Dominion of Canada for the extradition of appellant to Montreal, certain *ex parte* affidavits taken in Montreal and a complaint made and warrant issued against appellant in that city, an abstract of the oral testimony taken before the United States Commissioner at Chicago, and the warrant of commitment issued by the Commissioner, under which appellant is held in custody.

The complaint of the Consul General sets forth on information and belief that appellant, in the month of February, 1915, was guilty of the crime of receiving and retaining in his possession money to the amount of $1,500 in bills of the Bank of Montreal, the property of that bank, knowing the same to have been stolen; that a warrant has been issued by the police magistrate of the City of Montreal for the apprehension of appellant for the crime mentioned; that appellant is guilty of the indictable offense of receiving money knowing it to have been stolen, and is a fugitive from justice from the District of Montreal, Province of Quebec, and Dominion of Canada, and is now within the territory of the United States; that the offense of which he is charged is an offense within the treaties between the United States and Great Britain; and that deponent's information is based upon duly au-

thenticated copies of a warrant issued by the police magistrate of Montreal and of the complaint or information upon which that warrant was issued, and upon certain depositions of witnesses submitted to be filed with the present complaint. The reference is to the Montreal affidavits, which set forth in substance that in the month of September, 1911, a branch of the Bank of Montreal at New Westminster, British Columbia, was broken into and a large sum of money ($271,721) stolen from the bank, including a considerable number of $5 bills of the Bank of Montreal, seventy-eight of these being identified by their numbers; that on February 10, 1915, in the City of Montreal, appellant purchased a diamond ring from one Eaves, a jeweler, and paid for it $250, of which $245 was composed of new Bank of Montreal $5 bills, more than thirty of these being identified by the numbers as among those stolen; that on February 9, 1915, one Wakefield purchased in Montreal some travelers' checks, paying for them in part with fifty new $5 bills of the Bank of Montreal, of which twenty or more were identified as being a part of the stolen money; and that on February 10, 1915, Wakefield procured from a firm of bankers in Montreal an exchange of Canadian bills for American currency, the exchange including fifty new $5 bills of the Bank of Montreal, of which fifteen or more were identified as being a part of those stolen.

Appellant having been apprehended, a hearing was had before the United States Commissioner, at which the above-mentioned documents were introduced and testimony was given tending to show that appellant and Wakefield were together in Montreal on the ninth and tenth of February, 1915, coöperating in the exchange of the stolen bills for travelers' checks and United States currency; and that on the evening of February 10 they left Montreal together in a manner indicating an intent to evade detection, and went to Chicago, where almost

immediately they began systematic efforts to procure the exchange of Bank of Montreal bills for United States currency.

The Commissioner deeming the evidence sufficient to sustain the charge, the warrant of commitment was issued, the proceedings and evidence being certified in due course to the Secretary of State, pursuant to § 5270, Rev. Stat.

Under the applicable provisions of our treaties with Great Britain (Treaty of Aug. 9, 1842, Art. X; 8 Stat. 572, 576; Treaty of July 12, 1889, Art. I; 26 Stat. 1508, 1509), there is included among the extraditable offenses that of "receiving any money, valuable security, or other property, knowing the same to have been embezzled, stolen, or fraudulently obtained."

In behalf of appellant it is objected that while the criminal code of Canada defines as indictable offenses (a) the receiving *or* retaining in possession anything obtained by any offense punishable on indictment, knowing it to have been so obtained, and (b) the receiving *or* retaining in possession any money or valuable security or other thing, the stealing whereof is declared to be an indictable offense, knowing the same to have been stolen, the offense charged in the complaint filed and in the warrant issued in Montreal and in the Consul General's complaint is that of receiving *and* retaining in his possession money, etc., knowing it had been stolen. The argument is that the Canadian statute treats receiving and retaining as distinct offenses, connecting them with the disjunctive "or," while the complaints treat the two acts as together constituting one offense. Properly interpreted, however, they charge the commission of both offenses; and if only one, that of receiving, etc., is extraditable by the treaty, this does not render appellant's detention unlawful, since it is not to be presumed that the demanding government will suffer him to be tried or punished for any offense other than that for which he is surrendered, in violation

of Article III of the Treaty of 1889. *Kelly* v. *Griffin, ante,* pp. 6, 15.

It is insisted that the Consul General's complaint does not allege that the offense was committed in Canada, that the evidence relied upon raises no presumption that appellant committed anywhere the offense of *receiving* stolen property knowing it to be stolen (the offense specified in the treaty), and that it raises no presumption that appellant committed the offense in Montreal or anywhere in the Dominion of Canada.

The criticism upon the complaint is unsubstantial. It is fairly to be inferred from what is stated that the crime was committed in Canada, and it is distinctly averred that appellant is a fugitive from justice from the District of Montreal, in that Dominion, and that the offense with which he is charged is an offense within the treaties between the United States and Great Britain. Besides this, it is stated that deponent's information is based upon authenticated copies of a warrant issued by the police magistrate of Montreal and of the complaint upon which that warrant was issued, and upon certain depositions submitted and to be filed with the present complaint; the depositions being those taken in Montreal. It is clear that the intent was to charge that the offense was committed in Canada.

As to the effect of the evidence: The Commissioner doubtless held that the fact of possession, taken in connection with the other facts of the case, raised a presumption either that appellant was a party to the burglary or that he afterwards obtained possession of the bills with guilty knowledge. Appellant disputes the inference, and, assuming it to be well founded, insists that there is nothing in the law of probabilities to sustain an inference that "possession by a man during a visit of a few days to Montreal of goods that were stolen more than three years previously in British Columbia makes it more probable

that he received the goods in Canada than that he received them in the United States." There is nothing in the evidence to require the inference that appellant was paying a brief visit to Montreal. It appears that he has a brother who is in business in Chicago, and that he himself was in that city in the summer of 1914, and, on three occasions, with intervals of several weeks, exchanged Canadian money there for United States currency. This is consistent with the inference that he was then exchanging part of the stolen money, but does not require the inference that he had a fixed place of abode in Chicago. The stolen bills that were in appellant's possession in Montreal in February, 1915, are not shown to have been removed from the Dominion after the time they were stolen from the bank in September, 1911. As it was a reasonable inference—they being "new bills"—that they had never before been used in exchange, and because so many of them were found together in the hands of appellant and his confederate three and a half years after the burglary, it was further inferable that they had been retained during the intervening period with the purpose of awaiting such opportunity for passing them as might come from relaxed vigilance on the part of the authorities; and since the Dominion of Canada is the natural and convenient market for bills of the Bank of Montreal, it was inferable that the bills had not been taken out of the Dominion since the time they were stolen; and, if not, it followed that appellant must have been within the Dominion when he received them. That they were received with knowledge that they had been stolen, might be inferred from the fact of the burglary coupled with the suspicious circumstances (only a part of which we have referred to) attending the efforts to exchange them for other forms of property.

The Commissioner deemed the evidence sufficient to sustain the charge (Rev. Stat., § 5270), and since he had jurisdiction of the subject-matter and of the accused, and

the offense is within the treaty, his finding cannot be reversed on *habeas corpus* if he acted upon competent and adequate evidence. *McNamara* v. *Henkel*, 226 U. S. 520, 523.

It is insisted that the Montreal affidavits, essential to show that the alleged offense was committed within the Dominion, were incompetent because taken *ex parte*, in the absence of appellant and without opportunity for cross-examination. The Treaty of 1842 provides in Article X that extradition shall only be had "upon such evidence of criminality as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial, if the crime or offence had there been committed." Section 5271, Rev. Stat., as amended by act of August 3, 1882, §§ 5 and 6 (c. 378, 22 Stat. 215, 216), provides that any depositions, warrants, or other papers or copies thereof shall be admissible in evidence at the hearing if properly authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country, and that the certificate of the principal diplomatic or consular officer of the United States resident in the foreign country shall be proof of such authentication. The Montreal affidavits, complaints, warrant, etc., are properly authenticated in accordance with this provision. It is one of the objects of § 5271 to obviate the necessity of confronting the accused with the witnesses against him; and a construction of this section, or of the treaty, that would require the demanding government to send its citizens to another country to institute legal proceedings would defeat the whole object of the treaty. *Rice* v. *Ames*, 180 U. S. 371, 375; *Yordi* v. *Nolte*, 215 U. S. 227, 231.

All of the objections savor of technicality. And since the jurisdiction of the Commissioner is clear, and the evidence abundantly sufficient to furnish reasonable ground for the belief that appellant has committed within

the Dominion of Canada a crime that is an offense under the laws of the Dominion, as well as under those of Illinois (2 Jones & Add. Ill. Stat. Ann., § 3892), and is covered by the terms of the treaty, and that he is a fugitive from justice, a fair observance of the obligations of the treaty requires that he be surrendered. *Glucksman* v. *Henkel*, 221 U. S. 508, 512.

*Final order affirmed.*