520 F.2d 726
 UNITED STATES of America ex rel. Kazuyuki SAKAGUCHI, Realtor-Appellant,
v.
Thomas KAULUKUKUI, in his capacity as United States Marshal,
and Henry Kissinger, Secretary of State,
Respondents-Appellees.
 No. 75-1740.
 United States Court of Appeals,
Ninth Circuit.
 July 9, 1975.
 
 Ralph F. Matsumura, Nathaniel Y. T. Lum, Honolulu, Hawaii, for realtor-appellant.
 Murray R. Stein, Crim. Div., Dept. of Justice, Washington, D.C.; Harold M. Fong, U. S. Atty., Honolulu, Hawaii, John L. Murphy, Chief, Government Regulations Section, Crim. Div., Dept. of Justice, Washington, D.C., for respondents-appellees.
 OPINION
 Before BARNES, WRIGHT and GOODWIN, Circuit Judges.
 BARNES, Circuit Judge:
 
 
 1
 On July 7, 1975, this panel affirmed the denial of a petition for a writ of habeas corpus ordered by the District Court of the District of Hawaii, Honorable Martin Pence, Senior Judge of the District of Hawaii, on February 12, 1975.
 
 
 2
 Appellant had previously been imprisoned by reason of an Order of Commitment issued by the Honorable Samuel P. King, District Judge of the District of Hawaii, on January 13, 1975, upon a finding duly made of appellant's extraditability, pursuant to Title 18 U.S.C. § 3184.[1]
 
 
 3
 Appellant filed with his petition for habeas corpus, an "Order to Show Cause" why the writ should not issue, and an Affidavit of Disqualification of Judge King, based on 28 U.S.C. § 47.
 
 
 4
 Appellant, a native citizen of Japan who had permanent residence status in the United States, was accused by Japanese authorities of the crime of murder.
 
 
 5
 Plaintiff was originally arrested and confined, in the United States upon a complaint, reciting appellant had been charged with murder while visiting in Japan. A warrant was issued in Japan for his arrest. Appellant had returned to Hawaii, hence the treaty as to extradition was invoked by Japan. Appellant sought release on bail after his arrest in the United States, which was denied on January 6, 1975.
 
 
 6
 The treaty authorizes a person convicted or accused of a crime listed in Article II, thereof, to be extradited. "Murder, and (an) assault with intent to commit murder," are listed in Article II, (1).
 
 
 7
 Article V of the same treaty provides that "when the fugitive is merely charged with a crime, a duly authenticated copy of the warrant of arrest, . . . and of the depositions on which such warrant may have been issued, must accompany the requisition." Each was duly authenticated, and each was filed as evidence in the hearing before Judge King on January 13, 1975. Certain documents which had been prepared by the Japanese police and prosecutor's office were received in evidence. Appellant's counsel objected to these documents, asserting:
 
 
 8
 (1) the documents were not duly authenticated;
 
 
 9
 (2) the documents were incompetent, without foundation and not admissible;
 
 
 10
 (3) there was no proof of probable cause appellant had committed the murder.
 
 
 11
 The objections were overruled, and the appellant was ordered extraditable by Judge King. Before the Secretary of State could issue a warrant of surrender to Japan, appellant filed a petition for writ of habeas corpus.
 
 
 12
 Presumably[2] because appellant had filed his motion to disqualify Judge King, based on 28 U.S.C. § 47[3] and had demanded that another judge hear his petition for habeas corpus, Senior District Judge Martin Pence heard the petition and denied appellant's petition for habeas corpus on February 12, 1975.
 
 
 13
 From this denial, this appeal is taken.
 
 
 14
 The Government, in meeting the issue, accepts the definition of appellant's first alleged error as "improper authentication"; and asserts that 18 U.S.C. § 3190 controls,[4] covering not only the appellant's objection to the authentication itself, but also his second objection to the supporting papers which likewise were so authenticated. (Exhibits G-1, G-2, and G-3.)
 
 
 15
 The Government asserts in opposition to appellant's third alleged error (no proof of probable cause appellant committed the murder) that there was sufficient evidence to establish the prerequisites for a finding of extraditability.
 
 
 16
 Appellant admits in his brief "the documents submitted in support of the request for extradition appear to satisfy the requirements of both the treaty and statute as regarding their authenticity." He concedes that the translated documents (Gov. Ex. G-2) contain a certification of the United States Consul General in Japan "that the documents are properly and legally authenticated so as to entitle them to be received in evidence." (Op. Br. p. 6.)
 
 
 17
 Appellant cites 18 U.S.C. § 3190, but, without citing a single case, asserts the authentication is improper because "the documents reveal inconsistencies and discrepancies." (Op. Br. p. 6.) This, of course, is of no consequence if there exists in those documents "any" other sufficient competent evidence. We conclude there was. (See note 4.)
 
 
 18
 Nor can appellant rely on the theory that Hawaiian law sets the standard by which the sufficiency of competent evidence can be determined. We approve the holding in Shapiro v. Ferrandina, 478 F.2d 894 (2d Cir. 1973), wherein cases which hold contrary to appellant's position are approved and held binding.[5]
 
 
 19
 Appellant next attempts to go behind his concessions as to authentication, and in the form of a conclusionary statement (to which he makes strenuous objection respecting portions of the authenticated exhibits), attacks the sufficiency and admissibility of certain facts.
 
 
 20
 We prefer to rely on the record before us, and the counterstatement of facts in the Government's Brief which appears in the margin.[6]
 
 
 21
 We turn to the law. The appellant recognized that the review of a finding of extraditability is not subject to direct appeal. Collins v. Miller, 252 U.S. 364, 369, 40 S.Ct. 347, 64 L.Ed. 616 (1920); Jimenez v. Aristequieta, 290 F.2d 106, 107 (5th Cir. 1961); Shapiro v. Ferrandina, 478 F.2d 894, 901 (2d Cir. 1973); cert. dismissed by agreement of parties 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 133 (1973).
 
 
 22
 Appellant therefore was required to seek relief by filing a petition for habeas corpus. See Shapiro v. Ferrandina, supra, p. 901. But his brief shows little regard for other admonitions and the law expressed in the Ferrandina case.
 
 
 23
 For example, in addition to the quotation from Ferrandina, supra, n. 5, with respect to authentication, a second example appears.
 
 
 24
 "In attacking the weight and competence of the evidence before the extraditing magistrate, Shapiro labors under two sets of difficulties. First, the function of the extraditing magistrate is not to decide guilt or innocence, but merely to determine whether there is 'competent legal evidence which . . . would justify his apprehension and commitment for trial if the crime has been committed in that state.' (citing cases) . . . Second, . . . (a) review of his decision generally must be pursued by writ of habeas corpus . . . which . . . is more restricted than review on appeal. The habeas judge can only 'inquire whether the magistrate had jurisdiction, whether the offense charged is within the treaty, and . . . whether there was any (competent) evidence warranting the finding that there was reasonable ground to believe the accused guilty.' Fernandez v. Phillips, 268 U.S. 311, 312, 45 S.Ct. 541, 542, 69 L.Ed. 970 (1925)." (Brackets in original quotation.) Id. p. 900.
 
 
 25
 For a third objection, appellant urges there was "no legally competent evidence to establish probable cause," i. e., only hearsay.
 
 
 26
 Shapiro raised the same point "insufficient competent evidence . . . to satisfy New York's test for sufficiency of the evidence necessary to hold defendant prior to trial", i. e., that "only non-hearsay evidence is admissible to demonstrate reasonable cause to believe that defendant committed a felony." We reject this contention.
 
 
 27
 After commenting on the type of evidence heard by Judge Pollock before his finding of Shapiro's extraditability,[7] Judge Friendly, in Ferrandina, wrote:
 
 
 28
 While the argument is ingenious, it runs afoul of Collins v. Loisel, supra, 259 U.S. (309), at 317, 42 S.Ct. 469 (66 L.Ed. 956), as well as of good sense. Dealing with the Extradition Treaty with Great Britain, 8 Stat. 572, 576 (1842), whose language differs from the treaty with Israel in form but not in substance, Mr. Justice Brandeis said that the treaty's reference to "evidence of criminality" referred "to the scope of the evidence or its sufficiency to block out those elements essential to a conviction," not "to the character of the evidence or to the rules governing admissibility." He added, even more pertinently:
 
 
 29
 Thus, unsworn statements of absent witnesses may be acted upon by the committing magistrate, although they could not have been received by him under the law of the State on a preliminary examination.
 
 
 30
 Appellant's attempt to rationalize a rule contrary to Collins v. Loisel (cited above) and Shapiro v. Ferrandina (quoted above), without citation of any cases supporting his position, is a futile endeavor.
 
 
 31
 We again emphasize that this court is "restrained on this appeal both by the limited nature of the magistrate's hearing and by the standards of review on habeas corpus. The magistrate's function is to determine whether there is 'any' evidence sufficient to establish reasonable or probable cause, Fernandez v. Phillips, supra, 268 U.S. at 311, 45 S.Ct. 541 . . .." Shapiro v. Ferrandina, supra, pp. 904-905 and 913-914.
 
 
 32
 Extradition treaties must be interpreted liberally. Factor v. Laubenheimer, 290 U.S. 276, 293-301, 54 S.Ct. 191, 78 L.Ed. 315 (1933), " more liberally than a criminal statute or the technical requirements of criminal procedure." Id. p. 298, 54 S.Ct. p. 197 ". . . unsworn statements of absent witnesses may be acted upon by the committing magistrate, although they could not have been received by him under the law of the state (up)on a preliminary examination." Collins v. Loisel, 259 U.S. at 317, 42 S.Ct. at 472. The certification fully complies with the provisions of 18 U.S.C. § 3190.
 
 
 33
 Finding no error, we have heretofore by order affirmed the denial of the writ of habeas corpus; and ordered the clerk to issue the remand upon the filing of said order. This opinion supplements and explains that order of July 7, 1975.
 
 
 
 [1]
 Appellant's extradition was formally requested by the government of Japan through diplomatic channels pursuant to the treaty on extradition in force between Japan and the United States. 24 Stat. 1015
 
 
 [2]
 Nothing in the record brought to us shows any action on the motion to disqualify Judge King
 
 
 [3]
 28 U.S.C. § 47: "No judge shall hear or determine an appeal from the decision of a case or issue tried by him."
 This petition is not an appeal. The applicability of 28 U.S.C. § 47 is questionable, to say the least. But we need not pass on this question in the present posture of this matter.
 
 
 [4]
 § 3190. Evidence on hearing
 Depositions, warrants, or other papers or copies thereof offered in evidence upon the hearing of any extradition case shall be received and admitted as evidence on such hearing for all the purposes of such hearing if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that the same, so offered, are authenticated in the manner required. June 25, 1948, c. 645, 62 Stat. 824.
 
 
 [5]
 Furthermore, 18 U.S.C. § 3190 provides that, subject to proper certification, to be discussed below, "(d)epositions, warrants, or other papers or copies thereof . . . shall be received and admitted as evidence . . ." in extradition hearings, which would override the New York statute with respect to the inadmissibility of hearsay in any event. Beyond this, the principle Shapiro asks us to adopt would run counter to one of the prime objects of bilateral extradition agreements, namely, "to obviate the necessity of confronting the accused with the witnesses against him; . . . (requiring) the demanding government to send its citizens to another country to institute legal proceedings, would defeat the whole object of the treaty." Bingham v. Bradley, 241 U.S. 511, 517, 36 S.Ct. 634, 637, 60 L.Ed. 1136 (1916); Note, United States Extradition Procedures, 16 N.Y. Law Forum 420, 442-43 (1970)
 In extradition hearings, see Collins v. Loisel, infra, this is precisely the sort of issue to be determined by national rather than by state law.6
 Note 6: We note in passing that hearsay evidence of the type in question here would be admissible in preliminary hearings under the American Law Institute's Model Code of Pre-Arraignment Procedure § 330.4(4) (Tent. Draft 1972) and the Proposed Amendments to the Federal Rules of Criminal Procedure § 51(a), reprinted at 48 F.R.D. 567 (1970). The former conditions admissibility on a determination by the presiding judge that "it would impose an unreasonable burden on one of the parties" to require direct testimonial proof. The commentary for each of these rules gives the example of a distant primary witness as the principal rationale for a flexible standard. The commentary to the ALI Model Code, at 88-90, stated that "most" states do not use the normal rules of evidence at the preliminary hearing stage, although it cites three states contra. (Idem, p. 902.)
 
 
 [6]
 COUNTERSTATEMENT OF THE CASE
 Appellant had been found extraditable to Japan, where he has been charged with the crime of murder, on January 13, 1975, by United States District Court Judge Samuel P. King, District of Hawaii, at an extradition hearing. Subsequently appellant filed a petition for a writ of habeas corpus in the same court in an attempt to reverse the finding against him. On February 10, 1975, Judge Martin Pence denied the petition and discharged the writ. By this appeal, appellant is seeking to reverse the findings against him, and thus prevent his surrender to agents of the Government of Japan.
 The appellant, Kazuyuki Sakaguchi, a native and citizen of Japan, who has acquired permanent resident status in the United States, was charged by Japanese authorities on December 3, 1974, with having murdered Jinichi Nakamura in Omuta, Japan, on October 2, 1972. As a result, a warrant was issued for his arrest. When it was determined that he had returned to his residence in Hawaii, the Government of Japan, pursuant to the provisions of the extradition treaty in force between the United States and Japan, 24 Stat. 1015, requested the Secretary of State to obtain his surrender in order that he could be returned to Japan to stand trial.
 Accordingly, upon a request from the Department of State, the Department of Justice authorized the United States Attorney to represent the Government of Japan and to initiate the proposed extradition proceedings. As a result, the United States Attorney filed a complaint pursuant to 18 U.S.C. 3184 and obtained a warrant for the appellant's arrest on December 18, 1974. The appellant was arrested the same day and held in custody pending the hearing on his extraditability. The extradition hearing, as required by the applicable treaty and 18 U.S.C. 3184, was held on January 13, 1975, before United States District Court Judge Samuel P. King. At the hearing, the Government moved the introduction into evidence, for all purposes, the formal extradition documents submitted by the Japanese Government. Over the objection of appellant's counsel, the court granted the motion because it found that the documents were duly certified by Japanese authorities and by a United States diplomatic official as required by 18 U.S.C. 3190, as well as the Japanese Ambassador to the United States.
 Included among the formal documents were copies of the charges made against the appellant, the applicable Japanese laws, and evidence sufficient to establish probable cause to believe the appellant committed the crime for which he had been charged and to justify his committal for trial if the crime had been committed in the United States. Among other evidence was a "death bed" statement by the victim that a young man attacked him; two signed confession statements by the appellant's uncle of his desire to see the victim dead and his discussion on that point with his nephew, the appellant, who agreed to commit the crime; an investigation report by Japanese police which reviewed the "death bed" statement, the autopsy report, the "on-the-spot" investigation, the statements of numerous witnesses, the thorough background reports on the appellant and his uncle and their possible alibis and statements by the appellant's wife, mother, and a cousin. More specifically, the appellant's uncle, according to his statement, advised appellant on October 1, 1972, that he wanted to murder the victim before the victim could murder him, and asked the appellant to help him. However, the appellant announced: "Leave it up to me, I will take care of him for you. If it has to be done, it is better to get it over with quickly." The appellant's wife, in a statement to Japanese police, declared that her husband, without explanation, left her and their children alone for several days just before and after the murder occurred allegedly traveling to the island of Kyushu. Appellant's mother, also in a statement to Japanese police, supported her daughter-in-law's statement. Masami Horikawa, a cousin of the appellant, in a statement to Japanese police, stated that appellant personally told him "I took care of the guy who was mentally and financially giving my uncle a hard time. I did it after my uncle asked me to do it." Horikawa also overheard the appellant confess to his brother: "My uncle who had taken care of me morally and financially had been in a hole for five long years, and was on the verge of bankruptcy, and was ready to throw in the towel. As I am indebted to my uncle much more than to my own father, I gave him an affirmative answer without hesitation when he asked me to do it, and took care of that man. Most likely, he is out cold. . . . (M)y uncle told me he was suffering terribly in the hands of a certain person. So taking my uncle's place I got even with the other guy." Also introduced into evidence, without objection, was an affidavit from the Office of the Legal Adviser, Department of State, to which was attached a copy of the applicable treaty and the requisition for surrender. The appellant offered no evidence.
 
 
 [7]
 ". . . Judge Pollock based his findings primarily, indeed entirely, on written statements and records of testimony of persons not before him and not subject to cross-examination by Shapiro." Ferrandina, p. 901