**In the Matter of The EXTRADITION OF Mehmet Semih SIDALI, A Fugitive From Turkey.**

No. 94–39A–01.

United States District Court, D. New Jersey.

Sept. 22, 1995.

---

Andrew O. Schiff, Assistant United States Attorney, Trenton, New Jersey.

SuZann Lamb, Sara Criscitelli, Department of Justice, Washington, DC.

Thomas E. Moseley, Strykers, Tams & Dill, Newark, New Jersey.

Michael P. DiRaimondo, New York City.

### MEMORANDUM OPINION

HUGHES, United States Magistrate Judge.

This matter comes before the Court upon the Government's complaint seeking the extradition of Mehmet Semih Sidali for the rape and murder of a fifteen-year-old girl. Among other arguments, Mr. Sidali claims that in view of two acquittals in the lower courts in the Republic of Turkey, his extradition would constitute a great injustice. The Court conducted an extradition hearing on September 20, 1995, and has reviewed the written submissions of the parties. For the following reasons, the Court will issue a certificate of extraditability.

### I. *BACKGROUND*

On April 17, 1970, Dursun Eskin, who was staying with the Sidali family in Turkey, was brutally raped and murdered. Thereafter, there were at least two separate findings of no probable cause for arrest by Turkish Magistrates when the local prosecutor sought to charge Mr. Sidali with the crimes. Afterward, according to Turkish law, the victim's family petitioned for a trial. The petition was granted and a full trial on the merits was conducted. This trial culminated in an acquittal on June 7, 1972 by a 2–1 vote of a judicial panel which considered the evidence. The victim's family then secured an appeal to the Turkish Court of Appeals which remanded the case for retrial on May 28, 1973. A second judicial panel, by unanimous vote, acquitted Mr. Sidali a second time after considering the evidence on May 17, 1976.

On December 17, 1976, Mr. Sidali traveled to the Turkish capital to secure a passport for travel to the United States. He was

temporarily detained pending a check to assure that there were no criminal charges against him. As a result of this check, he received not only a valid passport but also a document stating that he had been cleared of the specific crimes involved here. On December 13, 1976, the Turkish Court of Appeals, after reviewing the second acquittal, reversed that trial court and found Mr. Sidali guilty of the crimes. Mr. Sidali left Turkey on December 31, 1976. On March 29, 1977, the Turkish Court issued an absentia warrant for the arrest of Mr. Sidali.

## II. PROCEDURAL HISTORY

On October 31, 1994, a complaint, seeking the extradition of Mr. Sidali from the United States to Turkey, was filed with the Court and a warrant was issued for his arrest. The basis for the complaint was the absentia warrant for Mr. Sidali's arrest issued by Turkish authorities after Mr. Sidali was convicted by the General Criminal Board of the Court of Appeals of the rape and murder of Dursun Eskin.

On November 16, 1994, Mr. Sidali was arrested by agents of the Federal Bureau of Investigation and brought before the Court. The prisoner was presented with the complaint, advised of various rights, and, without objection from the Government, afforded the legal assistance of the Federal Public Defender. After the Government requested that the prisoner be detained pending an extradition hearing, counsel for Mr. Sidali sought a continuance of the initial hearing in order to assemble evidence to be used in an application for release.

On November 18, 1994, the Court conducted a hearing during which it heard testimony of five character witnesses for Mr. Sidali, reviewed numerous letters attesting to his good character, and considered the written and oral arguments of both counsel. That same day, the Court filed a Memorandum Opinion and Order detaining Mr. Sidali and remanding him to the custody of the United States Marshal pending a full extradition hearing.

Thereafter, on January 3, 1995, counsel for Mr. Sidali filed a motion for reconsideration of the November 18, 1994 detention order, principally claiming that newly discovered information justified release pending a full extradition hearing. Mr. Sidali claimed that, contrary to assertions in the Government's affidavit supporting the complaint for extradition, the "conviction" forming the basis for the absentia warrant is not final but merely requires a new (or third) trial for Mr. Sidali on the original rape and murder charges. The Court conducted a hearing on the renewed application for release on bail on January 26, 1995.

As a result of this hearing, the Court filed a Memorandum Opinion and Order, dated January 27, 1995, finding that Mr. Sidali presented no risk of flight and had demonstrated special circumstances justifying release. The specific special circumstances that this Court found were the unique history of acquittals and the high probability of success, in that, if he were returned to Turkey he would be acquitted a third time. Thus, this Court found that Mr. Sidali's release on bail was justified. The Court imposed several conditions upon Mr. Sidali's release which were designed to insure that Mr. Sidali would not flee the jurisdiction. The Court also issued an Order on January 27, 1995 staying the Order granting bail pending appeal by the Government.

The Government appealed this Court's release order to the District Judge who found, based on the certification of Thomas A. Johnson and a 'diplomatic note' from the Turkish Embassy, dated February 17, 1995, that Mr. Sidali is not entitled to a new trial upon his return to Turkey. The District Judge also noted that these two documents were not before this Court at the time of its decision granting bail and that the fact that Mr. Sidali would not be afforded a new trial "significantly impact[ed] on the reliability of [this Court's] findings regarding Mr. Sidali's risk of flight and probability of success. Accordingly, the District Judge vacated this Court's Order of January 27, 1995 granting bail and remanded this matter for further findings.

On April 17, 1995, upon remand, and after reviewing the same two new documents that the District Judge examined, this Court determined that Mr. Sidali will not be afforded

a new trial upon his return to Turkey, but will, instead, face a severe sentence. Thus, the Court found that there was, indeed, a high risk of flight and that Mr. Sidali's probability of success was significantly diminished. Accordingly, the Court found that release on bail pending a full extradition hearing was precluded and detained Mr. Sidali.

The extradition hearing originally was set for June 26, 1995, but was adjourned to September 20, 1995, at the request of Mr. Sidali's new attorneys, who were substituted in for the Federal Public Defender on May 25, 1995.

Subsequently, this Court denied additional motions for release upon grounds of Mr. Sidali's deteriorating physical condition. Mr. Sidali had been referred for testing and treatment for complaints of rectal bleeding, hypertension, and depression by the medical director of his place of incarceration. (Exhibit C–1)

At the extradition hearing, the Court considered the various exhibits offered and admitted into evidence, the competing "expert" affidavits relating to the interpretation of Turkish law (Exhibits G–6 and S–1), and heard the testimony of Mr. Sidali, his wife, and his physician. The Court then took the matter under advisement to again consider all of the evidence presented.

## III. *DISCUSSION*

Mr. Sidali argues five primary reasons why his extradition is improper. First, he asserts that the Turkish request does not seek Mr. Sidali's surrender for an extraditable offense and fails to satisfy the requirement of dual criminality. Second, he argues that the Turkish request does not present sufficient evidence to warrant extradition because Mr. Sidali was not convicted in Turkey and because the Turkish evidence does not establish probable cause. Third, Mr. Sidali claims that his extradition is precluded by the defenses under Article 3 of the Treaty on Extradition & Mutual Assistance in Criminal Matters, June 7, 1979, U.S.–Turk., Art. 3, T.I.A.S. No. 9891 [hereinafter Treaty]. Fourth, he claims that his extradition must be denied under Article 4 of the Treaty. Finally, he claims that the complaint for ex-

tradition must be denied as contrary to concepts of reciprocity and fundamental decency. Each of these arguments will be considered in turn after first discussing the authority of the Court.

### A. *SCOPE OF REVIEW*

■ In an extradition hearing, the Court's duty is to determine whether a probable cause exists that the Respondent committed the acts alleged. *Spatola v. United States*, 925 F.2d 615 (2d Cir.1991). The only inquiries which the extraditing court may make are:

1) whether there is an applicable extradition treaty between the requesting and requested parties which is in full force and effect;

2) whether charges are pending against the person to be extradited in the requesting nation;

3) whether the treaty authorizes extradition for the crimes alleged to have been committed; and

4) whether there is probable cause to believe that a crime was committed and that the person to be extradited committed it.

*See, Bingham v. Bradley*, 241 U.S. 511, 516–17, 36 S.Ct. 634, 636–37, 60 L.Ed. 1136 (1916); *Gallina v. Fraser*, 177 F.Supp. 856, 860 (D.Conn.1959), *aff'd*, 278 F.2d 77 (2d Cir.1960), *cert. denied*, 364 U.S. 851, 81 S.Ct. 97, 5 L.Ed.2d 74 (1960).

### B. *RESPONDENT'S ARGUMENTS*

1. *The Turkish Request Does Not Seek Mr. Sidali's Surrender For An Extraditable Offense and Fails To Satisfy The Requirement of Dual Criminality*

Mr. Sidali argues that Turkey has failed to demonstrate that the crime for which extradition is sought is covered by the present treaty or was covered by a previous treaty, Extradition Treaty Between the United States of America and Turkey, August 6, 1923, Art. 43 [hereinafter Lausanne Treaty]. He contends that the crime with which he is charged in the extradition documents is the crime of "homicide to conceal evidence" and that such a crime is not covered by either the

current treaty or the Lausanne Treaty. *See,* Treaty, Art. 2; Lausanne Treaty, Art. II(1). Additionally, he argues that Turkey has failed to meet the "dual criminality" requirement. Specifically, Mr. Sidali contends that Turkey has failed to establish that the alleged crime for which extradition is sought is punishable in each country. *Republic of France v. Moghadam,* 617 F.Supp. 777, 784 (N.D.Cal.1985). Respondent asserts that the United States' constitutional limitation on double jeopardy would place the alleged acts in the instant case beyond the reach of American jurisdiction, and thus, the dual criminality requirement has not been satisfied.

■ The Court finds that the dual criminality requirement has been satisfied because it is the "alleged acts" which must be punishable. Clearly, the alleged acts are punishable regardless of the notion of double jeopardy. The only inquiry the Court must make here is whether the alleged crime or act is *punishable* in each country. The answer to that question is clearly yes. The Court may not inquire into whether Mr. Sidali at this point in time, after two acquittals in Turkey, could be tried for the crime in this country.

■ In addition, after reviewing the Treaty itself, it is clear to the Court that "rape" and "murder" are crimes easily encompassed by its terms and the obvious intentions of both countries. A finding that "homicide to conceal evidence" falls outside the treaty would be unduly restrictive. The Treaty clearly refers to [crimes] punishable for at least a period of one year. Rape and murder fit within that description.

Accordingly, the Court finds that Turkey seeks the surrender of Mr. Sidali for an extraditable offense and that the dual criminality requirement has been satisfied.

2. *The Turkish Request Does Not Present Sufficient Evidence To Warrant Extradition Because Mr. Sidali Was Not Convicted In Turkey And Because The Turkish Evidence Does Not Establish Probable Cause*

Mr. Sidali argues that he was not convicted of a crime in Turkey because the December 1976 decision following Mr. Sidali's second acquittal merely annulled the judgment acquitting Mr. Sidali and did not constitute a "conviction."

Additionally, Mr. Sidali asserts that the evidence presented by the Government does not establish probable cause because *he* presents evidence which rebuts or explains the Turkish evidence, and thereby demonstrates that probable cause does not exist.

■ When an individual to be extradited has already been convicted, all that is necessary to establish probable cause is the record of the judgment of conviction. *See, Spatola,* 925 F.2d at 618; *United States v. Clark,* 470 F.Supp. 976, 978 (D.Vt.1979); *In re Edmondson,* 352 F.Supp. 22, 24 (D.Minn. 1972).

Here, the Court has reviewed the actual judgment of the General Criminal Board of the Court of Appeals, analyzed the relevant Turkish law (principally Sections 325 and 326 of the Turkish Code of Criminal Procedure), and considered the written communications between the two countries in connection with this extradition request (principally the Certification and Diplomatic Note, dated 2/17/95) (Exhibit G–5). The Court has also considered the legal expert opinions offered by the Respondent and the Government. (Exhibits S–1 and G–6). The Court adopts, as more persuasive given all the circumstances, the opinion that the action of the Turkish Court of Appeals resolves the issue of guilt or innocence and that there will be no third trial.

■ Accordingly, the Court finds that the judgment of the Turkish Court, when considered in light of Turkish law, constitutes a final judgment or "conviction" and, thus, the element of probable cause is satisfied by that finding alone.

Notwithstanding the fact that the record of the judgment of conviction establishes probable cause, the Court also finds that there is sufficient independent evidence to establish probable cause. *See,* Treaty, Art. 7(1)(c) (the requesting party need only submit evidence which according to the law of the United States "would justify arrest and committal for trial of the person sought if the offense

had been committed in the [United States].");
*See also, Bozilov v. Seifert,* 983 F.2d 140, 143 (9th Cir.1992) (the evidence submitted need only establish probable cause.). The Court finds that the evidence presented by the Government is sufficient to establish probable cause.

The Government has presented evidence, through documents and otherwise, that independently establishes probable cause. *See, Shapiro v. Ferrandina,* 478 F.2d 894, 902–903 (2d Cir.1973), *cert. dismissed,* 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 133 (1973). Among other facts, the Government has shown that the victim lived in Mr. Sidali's home; that she was raped and strangled; that Mr. Sidali had the opportunity to commit the crime; that Mr. Sidali was the only man living in the home at the time; that there was no conclusive proof that anyone else had entered the house; and that blood was discovered on Mr. Sidali's pajama sleeve shortly after the crime.

Though alone perhaps insufficient to permit a finding of proof beyond a reasonable doubt (a standard of proof here but not in Turkey), this evidence is enough to find probable cause that a crime was committed and that Mr. Sidali committed it.

■ Mr. Sidali has presented evidence, including his testimony, which may only be used to *explain* and not *contradict* the Government's evidence. *See, Oen Yin–Choy v. Robinson,* 858 F.2d 1400, 1406 (9th Cir.1988), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3157, 104 L.Ed.2d 1020 (1989). Here, Mr. Sidali seeks to have the Court weigh the testimony and make credibility determinations as to the ultimate issue of guilt or innocence. That determination is properly left to the trial court and not the extradition court. *See, Gill v. Imundi,* 747 F.Supp. 1028, 1045 (S.D.N.Y. 1990).

Accordingly, the Court also finds that the Turkish request does present sufficient evidence to establish probable cause thereby justifying extradition.

### 3. *Mr. Sidali's Extradition Is Precluded by Defenses Under Article 3 of The Treaty*

Mr. Sidali claims that under Article 3 of the Treaty there are certain defenses available to him which would preclude extradition. Specifically, Mr. Sidali claims that extradition cannot be granted when the person to be extradited is "immune by reason of lapse of time from prosecution or punishment for the extraditable offense, under the laws of either the Requesting or the Requested Party." Respondent's Br. at 16. Mr. Sidali argues that the time limitation for punishment under Turkish law expired in 1985, and thus, his extradition is untimely. Additionally, he argues that his extradition is also barred as untimely under the laws of this nation. Respondent contends that, pursuant to the right to a speedy trial guaranteed by the Sixth Amendment and the Speedy Trial Act, 18 U.S.C. § 3161 et seq., extradition is barred.

■ The Court finds that Mr. Sidali is not immune from punishment by reason of lapse of time under the laws of either the United States or Turkey. Speedy trial rights, as provided by our Constitution and statute, are, of course, unique to this country and, thus, offer no relief to Mr. Sidali. In addition, Mr. Sidali argues that the Turkish statute of limitations bars prosecution but he fails to acknowledge the generally accepted legal principle that his fugitive status would serve to toll the running of such a statute.

Further, Mr. Sidali asserts that, pursuant to Article 3(1)(d) of the Treaty, which states that if the person to be extradited "has been tried and acquitted or punished with *final and binding effect in the Requested Party* for the offense for which extradition is requested . . .", extradition must be denied. He argues that his extradition is barred by the notion of double jeopardy because his [two] prior acquittal[s] would be given final and binding effect in this country and he could not be prosecuted here.

■ The Court finds that Mr. Sidali is incorrect in this assertion because the clear wording of the Treaty states that the person to be extradited must have been "tried and acquitted or punished . . . in the Requested Party." Mr. Sidali has not been tried, acquitted or punished here and, thus, Article 3(1)(d) is inapplicable to the current situation. The Court believes that this section of

the Treaty was drafted to ensure that the individual to be extradited would not be tried for the same crime in both the requesting and requested nations. In the instant case, Article 3(1)(d) cannot be invoked because Mr. Sidali has not been tried, acquitted, or punished here.

Accordingly, Mr. Sidali's extradition cannot be prevented on these grounds.

### 4. Mr. Sidali's Extradition Must Be Denied Under Article 4 of the Treaty

Mr. Sidali argues that pursuant to Article 4(3) of the Treaty there is a prohibition against extraditing nationals. He argues that because he is eligible for naturalization and is currently in the process of applying for citizenship, he cannot be extradited. Alternatively, he asserts that this extradition proceeding should be stayed pending the outcome of his naturalization proceeding.

■ The Court finds that while Respondent is correct in his assertion that Article 4(3) of the Treaty does prohibit the extradition of nationals, Mr. Sidali overlooks one important point. Mr. Sidali is not a naturalized citizen and this Court is not required to stay this proceeding pending any naturalization proceeding. Additionally, the Court notes that the one significant difference between the instant case and those cases cited by Mr. Sidali is that the respondents in those cases were already naturalized citizens.

Accordingly, the extradition of Mr. Sidali is not barred on these grounds.

### 5. Extradition Must Be Denied As Contrary To Considerations of Reciprocity And Fundamental Decency

Mr. Sidali argues that treaties should be construed as imposing reciprocal obligations upon each party to the treaty and that there is no basis for such reciprocity when some aspect of the criminal process of the requesting state is completely contrary to the process in the requested state. Thus, Respondent asserts that there is no basis for reciprocity here and that he should not be extradited to Turkey because his extradition would be contrary to our nation's constitutional right to be free from double jeopardy.

■ The Court finds that this contention does not bar extradition because it is outside the scope of this Court's statutory authority, pursuant to 18 U.S.C. § 3184, to apply a violation of this country's double jeopardy rights to citizens of other countries. *See, Plaster v. United States,* 720 F.2d 340 (4th Cir.1983). Parenthetically, this case should cause citizens of the United States to stop a moment to appreciate the many significant freedoms which they routinely enjoy.

Finally, Mr. Sidali argues that there is an exception to the rule of "non-inquiry" where the individual to be extradited would be subject to procedures or punishment so contrary to the United States' sense of decency that such extradition should be denied. *See, Gallina v. Fraser,* 278 F.2d 77, 79 (2d Cir.1960), *cert. denied,* 364 U.S. 851, 81 S.Ct. 97, 5 L.Ed.2d 74 (1960). Mr. Sidali asserts that this case presents just such an instance. He contends that, because the history of his case in Turkey runs contrary to our prohibition against double jeopardy, his extradition is barred. For essentially the same reason, Mr. Sidali argues that sending him back to face a [potential] death sentence in light of his two prior acquittals would violate due process and "shock the conscience" of the Court as being completely contrary to our country's sense of decency. *See, Ahmad v. Wigen,* 726 F.Supp. 389, 410–415 (E.D.N.Y. 1989), *aff'd,* 910 F.2d 1063 (2d Cir.1990).

■ Although Mr. Sidali's punishment, if the conviction were to continue to stand in Turkey, remains uncertain, the Court must nevertheless concede that it has serious concerns about what has happened here. Extradition, given the history of two acquittals, when coupled with the lapse of time and Mr. Sidali's unblemished (and open) record in this country, must strike one, on first blush, as being unfair. But this uneasiness does not legally rise to the level of "shocking the conscience," thereby justifying an exception to the general rule of "non-inquiry."

In the extradition of fugitives between sister states in this country, for example, the executive branch may sometimes elect not to return a fugitive, found to be extraditable by the courts, based upon "fairness" concerns.

Similarly here, the general fairness of a requesting country's system of justice, and how it operates in a specific case, is better left, ordinarily, to the Secretary of State. This country has chosen to enter a treaty with Turkey through the executive branch and it is the executive branch that must reconcile the high ideals of the United States with the Turkish system of justice and how it was applied to Mr. Sidali's case.

This Court cannot legally substitute its judgment for that of foreign courts in how to fairly adjudicate cases in their own countries. Nor can this Court second-guess the wisdom of the Executive Branch in entering a treaty with another country in its effort to protect the interests of the United States in our ever-increasing global society.

Accordingly, the Court finds that extradition is not barred on these particular grounds.

### C. CONSTITUTIONALITY OF 18 U.S.C. § 3184

Mr. Sidali points to a recent decision, by the United States District Court for the District of Columbia, that the federal extradition statute, 18 U.S.C. § 3184, is unconstitutional, as a further basis for dismissal of the complaint here. He has filed a formal motion to "terminate extradition proceedings."

Essentially, the Court in *Lobue v. Christopher,* 893 F.Supp. 65 (D.D.C.1995), concluded that the extradition statute violates the separation of powers doctrine by permitting the Secretary of State to "review" decisions of extradition judges.

Initially, the Court notes that, as an extradition judge, the *Lobue* decision, involving a declaratory judgment action in another district, has no binding effect here. Moreover, as the *Lobue* court notes, in discussing the propriety of whether the *habeas* court in that case should also consider the constitutionality issue, a full consideration [here] would result in "an unnecessary duplication of judicial resources and piecemeal adjudication of this important issue . . ." *Lobue,* at p. 77.

By subsequent order, dated September 15, 1995, the *Lobue* court (1) granted class certification, to include Mr. Sidali and others awaiting extradition, (2) enjoined the Government from surrendering any person to a foreign government, and (3) declined to enjoin extradition proceedings in this case or other pending cases.

In passing, the Court simply notes its belief that the function of the Secretary of State is not to "review" a judicial decision but rather is something wholly different. The executive decision is much more expansive than the judicial decision. The Executive Branch must consider a wider variety of factors in determining whether to actually extradite an individual once a certificate of extraditability has been issued. *See, In re Extradition of Koskotas,* 127 F.R.D. 13 (D.Mass.1989), *order modified,* 740 F.Supp. 904 (D.Mass.1990), *aff'd,* 931 F.2d 169 (1st Cir.1991). Only the State Department, and not the Judiciary, may inquire into the motive behind a foreign nation's request for extradition.

■ Nevertheless, the Court declines to decide the constitutionality issue in favor of a full appellate review of *Lobue,* which has already begun.

Accordingly, the Court will deny the pending motion to terminate the extradition proceedings and will decline to rule on the claim that the extradition statute is unconstitutional, pending final resolution of *Lobue.*

## IV. DETERMINATION

### A. FINDINGS OF FACT

1. On April 17, 1970, a 15–year–old girl, who had been living in Mr. Sidali's home, was raped and murdered.

2. On June 6, 1972, Mr. Sidali was acquitted by a local panel of judges.

3. After remand, Mr. Sidali was again acquitted by a local panel of judges on July 16, 1976.

4. On December 13, 1976, the General Criminal Board of the Court of Appeals reversed the local court and imposed a final judgment of guilty.

5. Mr. Sidali had the opportunity to commit the crimes alleged.

6. Mr. Sidali was the only man living in the house at the time of the alleged crimes.

7. There is inconclusive proof to demonstrate that another man entered the house at the time of the crime.

8. Shortly after the crime, blood was discovered on Mr. Sidali's pajama sleeve.

9. Mr. Sidali left Turkey on or about December 31, 1976.

10. An arrest warrant was issued in Turkey for Mr. Sidali's arrest on March 29, 1977.

## B. *CONCLUSIONS OF LAW*

1. A judicial proceeding on a request for extradition is limited. *Fernandez v. Phillips,* 268 U.S. 311, 312, 45 S.Ct. 541, 542, 69 L.Ed. 970 (1925); *Hooker v. Klein,* 573 F.2d 1360 (9th Cir.1978).

2. The Judicial Branch should not ordinarily inquire into the criminal procedures of other countries. *Neeley [Neely] v. Henkel,* 180 U.S. 109, 21 S.Ct. 302, 45 L.Ed. 448 (1901).

3. The judgment of the General Criminal Board of the Court of Appeals of Turkey constitutes a "conviction" and is sufficient to support a finding of the probable cause necessary to extradite Mr. Sidali. *Spatola v. United States,* 925 F.2d 615, 618 (2d Cir.1991).

4. Alternatively, the evidence produced by the Government sufficiently establishes probable cause that crimes were committed and that Mr. Sidali committed them. (*see,* Findings of Fact, 5–8)

5. A treaty, between the United States and Turkey, concerning the extradition of international fugitives, is in full force and effect.

## C. *COMPLETION OF THE RECORD*

Future reviewers of this record may be unable to assess the true depth of genuine desolation exhibited by Mr. Sidali and his family throughout his various appearances before the Court over the last ten months. Nor should any reviewer misconstrue the determination to issue the certificate of ex-

traditability and disregard the legitimate concerns of the Court in this case.

Nevertheless, the Court's duty is clear and the certificate of extraditability shall issue. A man has been convicted by Turkish Courts of rape and murder. An international warrant was issued for the arrest of that man. Pursuant to its treaty with Turkey, the United States filed a complaint requiring his extradition. Mr. Sidali is this man.

Notwithstanding these findings and conclusions, this Court respectfully requests that the Secretary of State make further inquiry into the propriety of this particular extradition.

## V. *RELEASE PENDING FURTHER APPLICATIONS*

It is apparent to the Court that the issuance of a certificate of extraditability will not end this case as Mr. Sidali will pursue his vindication by filing a petition for a writ of habeas corpus and by applying to the Secretary of State for permission to remain in this country. In addition, he will, no doubt, take action in Turkey to set aside his conviction, which occurred almost twenty years ago for a crime that occurred almost twenty-five years ago. Finally, the constitutionality of the extradition statute itself has been questioned. The final resolution of these remaining issues will obviously take considerable time.

 Mr. Sidali is a sick man who faces a very formidable task. His precarious physical condition and the extraordinary task of re-assembling events that occurred almost a quarter of a century ago constitute "special circumstances" justifying his release pending a final decision by Appellate Courts and by the Secretary of State. *See, Salerno v. United States,* 878 F.2d 317 (9th Cir.1989).

In addition, the extradition statute which constitutes the authority for returning this man to Turkey has been found by a competent Court to be unconstitutional. This factor (never addressed in the one-hundred-and-fifty year history of this statute or its predecessors) also constitutes a "special circumstance", as the very authority to return this person to Turkey is in equipoise.

**1352**

Of course, the Court has also considered risk of flight in the wake of the issuance of the certification of extraditability. The Court has reconsidered its decision of April 17, 1995, and finds that Mr. Sidali does not present a risk of flight if certain stringent conditions on release are imposed. The Court has now heard Mr. Sidali testify under oath subject to cross examination. In addition, the Court has considered the entreaties of his neighbors, responsible members of the community who continue to remain firm in his support even after hearing the full presentation of the Government's evidence. Finally, the Court has considered the unwavering commitment of support by family members and Mr. Sidali's devotion to them.

Ordinarily, release for a person who has been found to be extraditable would be, for lack of a better expression, out of the question. Although rare, certain respondents in other cases have been permitted release even after the issuance of a certificate of extraditability. *See,* for example, *Arnbjornsdottir-Mendler v. United States,* 721 F.2d 679 (9th Cir.1983).

Here, the Court has observed Mr. Sidali, his family, and neighbors extensively for ten months and is firmly convinced that he is a person who shall face the responsibility of confronting these charges in either the United States of America or the Republic of Turkey. Specifically, the Court finds that this individual will not jeopardize, and more importantly, will not dishonor, his family by fleeing from his responsibilities.

Accordingly, Mr. Sidali shall be released pending final resolution of this matter in the United States, upon satisfaction of the following conditions:

1. $500,000 unsecured appearance bond to be co-signed by:
 a. his wife
 b. each of his two adult children and
 c. three (3) financially responsible members of the community to be approved by the Court;
2. Mr. Sidali's wife and son to be third party custodians as defined by 18 U.S.C. Section 3142(c)(B)(i);

3. home detention, except as expressly approved by Pretrial Services, with electronic surveillance to be paid for by Mr. Sidali;
4. report on daily basis to Pretrial Services; and
5. travel restricted to Mercer County, New Jersey.