776 F.2d 85
 1986 A.M.C. 1337
 MOBILE MARINE SALES, LIMITED, R.S. Stern, Inc., Old Dominion
Steamship Agency, Drew Chemical Corporation,
Intervening Plaintiffs,
v.
M/V PRODROMOS, her engines, tackle, apparel, etc., In Rem
Fisher Shipping Corporation, Titan Shipping &
Brokerage, Ltd.
Appeal of MOBILE MARINE SALES LIMITED.
Appeal of DREW CHEMICAL CORPORATION.
VAN OMMEREN ROTTERDAM, B.V., Locabail International Finance
Limited and Banque Paribas, Hermes Ship Chandlers,
Ltd., Intervenor Plaintiffs,
v.
M/V PRODROMOS, her engines, boilers, tackle, etc., In Rem
and Titan Shipping & Brokerage, Ltd., and Fisher
Shipping Corporation.
Appeal of VAN OMMEREN ROTTERDAM, B.V.
Appeal of HERMES SHIP CHANDLERS, LTD.
 Nos. 85-1094, 85-1140, 85-1128 and 85-1144.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 9, 1985.
Decided Nov. 4, 1985.
 
 Alfred E. Yudes, Jr. (argued), Burlingham, Underwood & Lord, New York City, for appellants.
 E. Michael Keating, III, Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for Mobile Marine Sales, Ltd.
 Dante Mattioni, Mattioni, Mattioni & Mattioni, Ltd., Philadelphia, Pa., for Drew Chemical Corp.
 James W. Johnson, White and Williams, Philadelphia, Pa., for Van Ommeren Rotterdam, B.V.
 Anastasius Efstratiades, Pierson & Morris, P.C., Philadelphia, Pa., for Hermes Ship Chandlers.
 Eugene R. Lippman (argued), Thomas Fisher, III, Andrea L. Gilbert, Krusen Evans and Bryne, Philadelphia, Pa., for appellees.
 Before SEITZ, BECKER and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 ROSENN, Circuit Judge.
 
 
 1
 Plaintiffs, four foreign maritime lien creditors of the defendant M/V PRODROMOS (the vessel), appeal from an interlocutory order[1] of the district court holding that the intervenors, two foreign banks, held a Panamanian mortgage which enjoyed preferred status under the Ship Mortgage Act of 1920, 46 U.S.C. Sec. 951 (1982) (the Act). If the intervenors' mortgage is preferred, plaintiffs will not be able to recover the cost of necessaries supplied the M/V PRODROMOS. Plaintiffs argue that the mortgage was fatally flawed by an omitted term and thus was not "duly registered" under Panamanian law, as required of foreign mortgages given preferred status under the Act. The district court disagreed, finding the mortgage was duly registered. We affirm.
 
 I.
 
 2
 The Fisher Shipping Corporation (Fisher), a Liberian corporation, bought the M/V PRODROMOS on January 11, 1983, financing its purchase with a loan from Locabail International Finance Limited of France and Banque Paribas of Bermuda (the Banks). The Banks secured the loan with a mortgage on the M/V PRODROMOS for $4,500,000, which Fisher executed in London the day it purchased the vessel. On the same day, the Banks accomplished both a preliminary registration of the vessel under the Panamanian flag and a preliminary registration of the mortgage on the vessel through the Consul General of Panama in London, who telexed the same to the Public Registry in Panama. Both registrations were protocolized (recorded with a Panamanian notary and formalized as public documents) within six months of their preliminary registration, as required by Panamanian statutes, and were filed with the Public Registry as Public Instruments Nos. 694 and 1165.
 
 
 3
 The mortgage agreement provided a space for the "Provisional Patente of Navigation Number" (alternately known as the navigation license number or naval patent),[2] but the space was left blank, both on the preliminary registration and on the protocolized registration. The navigation license number was included, however, in the preliminary registration of the M/V PRODROMOS under the Panamanian flag, and the preliminary registration of the mortgage made reference to the preliminary flag registration in describing the M/V PRODROMOS. Copies of the preliminary and protocolized mortgage registrations and flag registrations are recorded in a single microfilm file at the Public Registry, and the plaintiffs do not contend that the absence of the navigation license number from the mortgage registrations in any way affected the identity of the vessel for mortgage purposes or caused them any prejudice.
 
 
 4
 Plaintiffs argue that the omission of the navigation license from the preliminary and protocolized mortgage registrations render the registrations invalid under Panamanian law. Article 1515 of the Commercial Code of Panama specifies the procedural requirements for a naval mortgage contract. It states, in relevant part, that the naval mortgage contract "in every case, shall contain ... [t]he name, distinctive features of the vessel, a complete description thereof, her registry and navigation license."[3] These required items of description appear as the fifth of seven paragraphs detailing the information required for a naval mortgage; the navigation license number is the only item of information that was omitted from the mortgage. Dr. Frank de la Guardia, a maritime lawyer practicing in Panama, expressed the opinion on behalf of the plaintiffs that the absence of the navigation license number in the mortgage registrations made them fatally flawed and invalid. The Public Registry in a certified document obtained by the intervenor banks stated that the mortgage was duly registered, but the absence of the navigation license was apparently not brought to the attention of the Public Registry.
 
 
 5
 The M/V PRODROMOS sailed into Philadelphia on July 10, 1984, with many unpaid debts, and on July 12 and on subsequent dates the vessel was arrested by various parties asserting maritime lien claims. The four plaintiffs in this case supplied fuel, food, and other necessaries to the M/V PRODROMOS outside the United States. The plaintiffs, Mobile Marine Sales, Limited, of the United Kingdom, Van Ommeren Rotterdam, B.V., of the Netherlands, Drew Chemical Corporation of New Jersey (operating throughout the globe), and Hermes Ship Chandlers Limited of South Africa, made a total of approximately $300,000 in claims against the M/V PRODROMOS for services provided abroad. American suppliers made additional claims for approximately $250,000. The Banks intervened to enforce their mortgage interest, $4,500,000. All the actions were consolidated in the United States District Court for the Eastern District of Pennsylvania.
 
 
 6
 About a month after the ship was arrested, the Banks moved for its sale under Rule E(9) of the Supp.R. Admiralty and Maritime Claims, Fed.R.Civ.P. The district court ordered the United States Marshal to sell the M/V PRODROMOS for no less than two-thirds of its appraised value of $3,500,000. The Banks, the only bidders at the public auction, bought the ship for $2,450,000, slightly in excess of two-thirds its appraised price. Approximately $250,000 in liens against the M/V PRODROMOS for services performed in the United States, which under the Act are preferred over all other claims, were immediately settled. The Banks then moved the court to find that they were entitled to the remaining sum from the judicial sale, approximately $2,200,000, as holders of a foreign mortgage that is deemed to have preferred status under the Act. If the mortgage were found not to be preferred, plaintiffs would obtain the sum owed them, approximately $300,000, before funds would be applied to the mortgage. If the mortgage were preferred, the plaintiffs would receive nothing.
 
 
 7
 Judge Weiner for the district court rejected plaintiffs' argument that omission of the navigation license from the mortgage made its registration fatally defective under Panamanian law. He held that the mortgage was duly registered under Panamanian law, and thus was a preferred mortgage under the Act. The plaintiffs appeal.
 
 II.
 
 8
 Prior to the enactment of the Act in 1920, ship mortgages were held not to be maritime contracts and therefore could not be considered under a court's admiralty jurisdiction. Bogart v. The Steamboat John Jay, 58 U.S. (17 How.) 399, 402-03, 15 L.Ed. 95 (1854). Congress passed the Act to facilitate the dismantling by the United States of its merchant marine after World War I, with the United States expected to be the principal beneficiary, as the holder of most of the ship mortgages. G. Gilmore & C. Black, The Law of Admiralty 698 (2d ed. 1975). The Act made the lien of mortgages that complied with its procedural requirements a "preferred mortgage" and a maritime lien. 46 U.S.C. Sec. 922 (1982). It gave jurisdiction to foreclose to the district courts acting as admiralty courts. 46 U.S.C. Sec. 951 (1982). The Act only applied to American flag vessels and required the parties to the mortgage to be American citizens. 46 U.S.C. Sec. 922 (1982).
 
 
 9
 After World War II, the United States sought once again to dismantle its merchant fleet, but found that the increasingly popular use of foreign flags of convenience required expanding preferred mortgage status to foreign ship mortgages. H.R.Rep. No. 1662, 83d Cong., 2d Sess. 2, reprinted in 1954 U.S.Code Cong. & Ad.News 2451, 2452; S.Rep. No. 1213, 83d Cong., 2d Sess. 3. In 1954, Congress amended the Act to cover foreign mortgages, but the procedural requirements for domestic mortgages were not imposed. Instead, the Act viewed the foreign mortgage in light of the applicable foreign law. The Act reads, in relevant part:
 
 
 10
 Foreign ship mortgages.... [T]he term "preferred mortgage" shall include, in addition to a preferred mortgage made pursuant to the provisions of this chapter, any mortgage, hypothecation, or similar charge created as security upon any documented foreign vessel ... if such mortgage, hypothecation, or similar charge has been duly and validly executed in accordance with the laws of the foreign nation under the laws of which the vessel is documented and has been duly registered in accordance with such laws in a public register either at the port of registry of the vessel or at a central office....
 
 
 11
 46 U.S.C. Sec. 951 (emphasis added). The amendment goes on to note that foreign preferred mortgages are subordinate to maritime liens for services performed in the United States. Id.
 
 
 12
 The Act is a complex statutory scheme, and its terms are read with particularity and with no requirements imposed that are not explicit in the Act. See Detroit Trust Co. v. The Barlum, 293 U.S. 21, 40-42, 55 S.Ct. 31, 37, 79 L.Ed. 176 (1934) (construing earlier provisions of the Act). The 1954 amendment by its wording did not require that the foreign mortgage be a preferred mortgage or a maritime lien under the foreign law. G. Gilmore & C. Black at 700-01. Nor is a showing that the mortgage is valid under foreign substantive law required. See A/S Kreditt-Finans v. Cia Venetico de Navegacion S.A. of Panama, 560 F.Supp. 705, 709 (E.D.Pa.1983) (priority of a mortgage under the Act does not establish its validity under foreign law), aff'd mem., 729 F.2d 1446 (3d Cir.1984). The stringent procedural requirements for perfecting domestic ship mortgages are not imposed on foreign ship mortgages. 46 U.S.C. Sec. 951 (1982). Holders of foreign mortgages are free to enforce any greater rights they might have under foreign law in a foreign forum; the intention of the statute is to provide a simplified procedure for enforcing mortgages without destroying substantive rights. H.R.Rep. No. 1662, supra, at 3, reprinted in 1954 U.S.Code & Ad.News at 2453. All the Act requires is that the mortgage or similar charge be "duly and validly executed" and "duly registered" under the foreign law.
 
 
 13
 The narrow question presented in this case is whether the Banks' mortgage on the M/V PRODROMOS was "duly registered" under the laws of Panama, so as to be a preferred mortgage under the Act. Interpretation of the phrase "duly registered" in the Act appears to be a point of first impression in this case, and requires reference to the requirements of Panamanian law for registering a mortgage.
 
 
 14
 Foreign law questions are considered questions of law in the federal courts, and may be resolved by reference to any relevant information. Fed.R.Civ.P. 44.1. The court of appeals on review owes no deference to the district court's determination of foreign law, and may consider information not available to or considered by the district court. Kalmich v. Bruno, 553 F.2d 549, 552 (7th Cir.1977).
 
 
 15
 There are three grounds for finding that the mortgage was duly registered despite the omitted navigation license number. First, there is the certification by the Public Registry that the mortgage was duly registered. Although the district court was not explicit in its reasoning, it appears the certification was sufficient to persuade Judge Weiner that the mortgage was duly registered. Second, there is the reference in the preliminary and protocolized mortgage registrations to the preliminary flag registration, which contained the navigation license number omitted from the mortgage registrations. The omitted term may be deemed incorporated by reference. Third, there are Panamanian statutes, which to the extent provided by the parties appear to state that the absence of the navigation license number, while a ground for the Registry to refuse the registration, is not a ground for its subsequent cancellation.
 
 
 16
 The certification of due registration by the Public Registry is of limited persuasiveness. The Banks obtained the certification through a Panama law firm, which inspected the microfilm file of the M/V PRODROMOS at the Public Registry, made a list, and submitted the list to the Public Registry for certification as accurate. An official of the Public Registry copied the list word for word and certified it. The list was submitted twice. The first time, the Panama law firm stated that the mortgage registrations were "in full force," and the Public Registry official parroted this language. The second time, apparently with the requirements of the Act in mind, the Panama law firm described the mortgage as "duly registered," and once again the Public Registry official copied the exact language. The phrase "duly registered" appears in the ninth of twelve paragraphs of description. There is no indication that the Panama law firm alerted the Public Registry official to the importance of the phrase in American law or to the question of the omitted navigation license number. From the Panamanian statutes provided by the parties, it does not appear that the phrase "duly registered" has any meaning in Panamanian law, and the Public Registry official, in copying the phrase, may have meant to do no more than confirm that the mortgage registrations were on file at the Public Registry.
 
 
 17
 The Banks argue that the Public Registry in Panama is a quasi-judicial body, and that the recordation of a document by it is not subject to attack, absent fraud, in an American court.[4] Such a position overlooks Congress' intent in amending the Act in 1954. The amendment was to provide a remedy in United States courts for American holders of foreign ship mortgages, without removing any remedy that might be had in a foreign forum. Foreign remedies need not be exhausted or even pursued before relief is sought in United States courts. H.R.Rep. No. 1662, supra at 3, reprinted in 1954 U.S.Code Cong. & Ad.News at 2453. Nor is the Public Registry's statement that the mortgage was "duly registered" analogous to a judicial proceeding. The plaintiffs were not present, their interests were not represented, and the key question in this case--the effect of the omitted patent on the registration's validity--was not brought to the attention of the Public Registry. Under such conditions, the Public Registry's "decision" does not have collateral effect, except as a listing of the documents in the M/V PRODROMOS file. Compare Gulf Oil Trading Co. v. Creole Supply, 596 F.2d 515, 521 (2d Cir.1979) (decree of Bahamian court discharging maritime liens given recognition, preventing claim under Maritime Lien Act, 46 U.S.C. Sec. 971).
 
 
 18
 The Banks during the oral argument of this appeal for the first time raised the argument that the navigation license number included in the flag registration had been incorporated by reference in the mortgage registrations. Because questions of foreign law are questions of law over which a court on appeal has plenary review, we may consider the Banks' argument although it was not made to the district court. Fed.R.Civ.P. 44.1. The mortgage as registered in preliminary and protocolized form refers to the flag registration, which contains the navigation license number, in the same paragraph in which the navigation license number was omitted. The reference to the flag registration does not state that the navigation license number is to be found there. The Banks offer no proof that under Panamanian law reference in a mortgage registration to another document that supplies a necessary term will suffice to correct a flaw in the registration. Nor may we comfortably draw an analogy between the present situation and instances in American law where the parol evidence rule allows non-contradictory evidence outside the four corners of a contract to explain the contract's material terms. The question here is one of due registration and not contract interpretation.
 
 
 19
 American cases considering the meaning of due registration in different contexts do not directly address the question presented here: whether reference to another document in the same file of a registry suffices to cure a registration that lacks a necessary term. The American cases do make clear, however, a common policy underlying requirements of due registration in recording statutes. Despite the often-quoted broad statement of a legal encyclopedia that due registration means perfect regularity of procedure and compliance in all particulars with the legal requirements of registration, 28 C.J.S. Duly Sec. 1, the cases turn on whether the registration requirements necessary to give an innocent third party notice of claimed rights were followed. See Torgeson v. Connelly, 348 P.2d 63, 66 (Wyo.1959) (registration is invalid when made in the wrong place, because no constructive notice is given); Sabo v. Horvath, 559 P.2d 1038, 1043 (Alaska 1976) (deed recorded outside chain of title gives no notice and is invalid); Kenya Music, Inc. v. Warner Bros, Inc., 391 F.Supp. 1228, 1229 (S.D.N.Y.1975) (copyright registration is invalid unless done within the time provided by the statute). The omission of a minor item of identification[5] from one portion of a registry file, when it is included in another portion of the same file, does not seem the sort of omission that would render a registration invalid in this country. What remains to be resolved is the importance of the navigation license number as an item of information included in a mortgage registration under Panamanian law.
 
 
 20
 A review of the Panamanian statutes provided by the parties reveals that the omission of the navigation license number is not sufficient grounds for cancelling the mortgage registration under Panamanian law, and that the omission may be corrected at any time, without prejudice to the mortgage. The plaintiffs provided the opinion of a Panamanian lawyer, Dr. de la Guardia, that the omission of any term required by a Panamanian statute renders the mortgage registration invalid. Dr. de la Guardia supported his contention by reference to Article 31 of Decree 9 of January 13, 1920, the Panamanian public registry regulation, which provides: "All the documents by virtue of which some entry must be practiced in the Registry, must contain the requisites that the law specially or respectively provides for." But a provision of the Civil Code of Panama governing the operation of the Public Registry provides that registrations once made will be cancelled only for a few narrow reasons provided by statute. Article 1782 of the Panama Civil Code states:
 
 
 21
 Art. 1782.--The total cancellation of a recording may be requested in the following cases:
 
 
 22
 1) upon extinction of the immovable or real right recorded;
 
 
 23
 2) if the title by virtue of which the recording has been made is declared void;
 
 
 24
 3) when the recording is made, contravening the prohibitions contained under this Title [governing operation of the Public Registry].
 
 
 25
 The right granted by the mortgage has not been extinguished, the title in the M/V PRODROMOS has not been declared void, and no provisions governing the operation of the Public Registry[6] require cancellation of the mortgage registration when a term such as the navigation license number has been omitted. In fact, the Public Registry is authorized to correct "errors or omissions" in registrations. Article 1788 of the Panama Civil Code. Had the omission of the navigation license number been pointed out to the Public Registry, the number, present in the same file in the flag registration, could have been added to the mortgage registration. Absence of the number is not a ground for cancelling the registration under Panamanian law. Other than Dr. de la Guardia's opinion, the plaintiffs have offered no evidence to counter the unambiguous language of the Panamanian statutes, under which omission of the navigation license number is not sufficient to prevent a mortgage from remaining duly registered.
 
 
 26
 The plaintiffs' reference to the strict procedural requirements of the Act for domestic shipping mortgages does not offer convincing support for the proposition that such procedural niceties are generally to be imputed to foreign ship mortgages. As noted in a leading treatise, "[t]he Mortgage Act outdoes the worst of the old-fashioned state chattel mortgage acts in its insistence on formalities of execution and in the detail of its recording mechanics." G. Gilmore & C. Black at 706-07. The Act makes foreign mortgages preferred ship mortgages if they satisfy the foreign nation's procedural requirements for valid execution and due registration.
 
 III.
 
 27
 We conclude that the evidence of Panamanian law presented to this court supports the district court's holding that the mortgage was duly registered under Panamanian law and thus a preferred mortgage under the Act, although our reasoning differs from the district court's. It appears that the absence of the navigation license number from the mortgage registration, although a ground for the Registry's rejection of the registration, is not a ground for the subsequent cancellation of the registration. The omission could have been corrected, as provided by Panamanian law, and the incorporation of the flag registration by reference in the mortgage registration may suffice to satisfy the notion of fair notice implicit in a requirement of due registration. Even absent the incorporation by reference, the registration complied sufficiently with the procedural requirements to provide completely adequate notice of the mortgage on this vessel to any third party who inspected the records. Thus, the mortgage was duly registered under Panamanian law, and was entitled to preferred status as a foreign ship mortgage under the Act.
 
 
 28
 Accordingly, the interlocutory order of the district court will be affirmed.
 
 
 29
 SEITZ, Circuit Judge, concurring.
 
 
 30
 I concur in the judgment of the court. I write separately because I find it unnecessary to explore the nuances of Panamanian law. In my view, the fact that the mortgage was registered by the Public Registry in Panama creates a presumption under United States law that it was duly registered which can be defeated only by clear and convincing evidence to the contrary, see State of Israel v. M/V Nili, 318 F.Supp. 1196, 1199-1200 (S.D.Fla.1968), aff'd 435 F.2d 242, 245, 251-52 (5th Cir.1970), cert. denied, 401 U.S. 994, 91 S.Ct. 1232, 28 L.Ed.2d 532 (1971). No such clear and convincing showing was made in this case.
 
 
 
 [1]
 This court has jurisdiction of interlocutory appeals in admiralty cases pursuant to 28 U.S.C. Sec. 1292(a)(3) (1982). The district court had subject matter jurisdiction pursuant to 28 U.S.C. Sec. 1333 (1982) (admiralty jurisdiction)
 
 
 [2]
 The navigation license number or naval patent signifies that the vessel has a license permitting it to navigate under the Panamanian flag
 
 
 [3]
 All statutes of the Republic of Panama quoted in this opinion are from English translations provided by the intervenor banks and agreed to by the plaintiffs
 
 
 [4]
 We believe that the presumption of regularity relied on in the concurrence to this opinion does not apply to the facts of this case. The policy reasons for requiring substantial evidence before the honor of a foreign official acting in the line of duty is impugned, as was the case in State of Isreal v. M/V NILI, 435 F.2d 242, 245, 251-52 (5th Cir. 1970), cert denied, 401 U.S. 994, 91 S.Ct. 1232, 28 L.Ed.2d 532 (1971), are grounded in notions of comity and respect. These notions do not come into play here, where it is asserted only that the Public Registry, in performing a ministerial act, has not noticed a mistake that was not brought to its attention
 
 
 [5]
 The plaintiffs do not contend that the M/V PRODROMOS could not be identified as the vessel subject to the mortgage as a result of the absence of the navigation license number, or that they suffered any prejudice due to the omitted term. The vessel's name, dimensions, and weight are included in the mortgage registrations
 
 
 [6]
 The parties have provided all statute sections in the title of Panamanian law governing the operation of the Public Registry