

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-24-1997

# Sidali v. INS

Precedential or Non-Precedential:

Docket 96-5215

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation
"Sidali v. INS" (1997). *1997 Decisions.* Paper 45.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/45

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
————————

No. 96-5215
————————

MEHMET SEMIH SIDALI

vs.

IMMIGRATION AND NATURALIZATION SERVICE; THE UNITED STATES OF
AMERICA; WARREN CHRISTOPHER, Secretary of State;
CHARLES MCNEAL, Acting United States Marshal

Appellants
————————

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 95-cv-05665)
————————

Argued
December 10, 1996
Before:  BECKER, MANSMANN and GREENBERG, <u>Circuit</u> <u>Judges</u>.

(Filed February 24, 1997)
————————

Thomas E. Moseley, Esquire (ARGUED)
Suite 2600
One Gateway Center
Newark, New Jersey 07102

Michael P. DiRaimondo, Esquire
30 Rockefeller Plaza
New York, New York 10112

    COUNSEL FOR APPELLEE

Faith S. Hochberg
  United States Attorney
  District of New Jersey
Sara Criscitelli, Esquire (ARGUED)
Su Zann Lamb, Esquire
United States Department of Justice
Criminal Division
Office of International Affairs
5th Floor, Bond Building
1400 New York Avenue, N.W.
Washington, D.C. 20530

    COUNSEL FOR APPELLANTS

OPINION OF THE COURT

MANSMANN, Circuit Judge.

The government of Turkey sought the extradition of Mehmet Semih Sidali, a native of Turkey presently living in the United States, on the ground that he raped and murdered a fifteen-year old girl. After a hearing, a United States Magistrate Judge issued a Certification of Extraditability. Sidali subsequently petitioned the United States District Court for the District of New Jersey for a writ of habeas corpus on the ground that there was no probable cause to believe that he was guilty of the crimes for which he was charged. The district court granted Sidali's petition for habeas relief, and this appeal by the United States followed. We agree with the government that Sidali may be extradited because the requirement of probable cause was satisfied. We will therefore reverse the judgment of the district court and direct the court to deny Sidali's petition for a writ of habeas corpus.

I.[1]

In 1970, Sidali lived with his family in a two-story house in Mersin, Turkey. Sidali's parents lived on the second

_____

1. The facts and procedural history are stated comprehensively in the district court's opinion, Sidali v. Immigration & Naturalization Serv., 914 F. Supp. 1104 (D.N.J. 1996), and in the opinion of the magistrate judge, Matter of Extradition of Sidali, 899 F. Supp. 1342 (D.N.J. 1995). We repeat only those facts that are necessary to our decision of the case.

floor, and Sidali and his family lived on the first floor. Dursun Eskin, a fifteen-year-old girl whose mother had been a foster child of the family, also lived on the first floor.

On April 16, 1970, Sidali's father, daughter, and wife traveled to Ankara, Turkey, to obtain medical care for Sidali's father. While they were in Ankara, Sidali's aunt stayed with Sidali's mother in the Mersin house.

On the evening of April 17, 1970, the family's guard dog barked loudly, and Sidali's aunt called down to Dursun to make sure that she had not left the gate open. Dursun responded that she had not done so. Sidali arrived home at approximately 9:20 p.m. Thus, present in the house on the night of April 17, 1970, were Sidali, Sidali's mother, Sidali's aunt, and Dursun.

Several hours later, on the morning of April 18, 1970, Sidali's mother came downstairs and found Dursun dead. Dursun had been raped and murdered, strangled with Sidali's wife's belt that had been taken from a closet on the first floor of the home.

When the police arrived, Sidali suggested that a thief had broken into the house. The police examined the balcony door of the living room and discovered that there were two points at which force had been applied with an old screwdriver between the door and the frame. In addition, there was an iron sliding bar attached to the glass, but the frame into which it should have fit was not in place and could not be found. The doors were locked, however, and investigators stated that the evidence of tampering was not recent and that the doors did not appear to have been forced.

3

A physical examination of Sidali did not show any bruises or scratches on his hands, neck, face or body. Blood found on Dursun's bed sheet and underwear was Dursun's blood type and not Sidali's. A small blood stain was found on Sidali's pajama top, and a second blood spot was found on a cloth in a waste basket, but they were both deemed to be too small to yield accurate blood group typing. Sidali explained that the blood on his pajama top came from a mosquito bite the night before the murder, and that the cloth had been used to clean a small cut on his son's forehead a few days prior. Investigators did not attempt to identify the blood type of a sperm stain found on Dursun's sheet.

In May 1971, Sidali was arrested for the rape and murder of Dursun. He was tried before a three-judge panel of the First High Criminal Court of Mersin.[2] Pursuant to the Turkish Code of Criminal Procedure ("TCCP"), translated in The American Series of Foreign Penal Codes, Turkey, at the end of a trial (or within one week thereafter), the judgment is pronounced by a reading thereof. TCCP Art. 261. The judgment must include a declaration of the justification for the judgment. Id.

At the end of Sidali's trial, the trial court voted two to one to issue a judgment of acquittal. The majority justified its decision by stating that the evidence was neither sufficient nor concrete enough to convict, that there were no witnesses, and

_____

2. There are no jury trials in Turkey. Affidavit of Turgut Aydin, General Director of International Law and Foreign Relations of the Turkish Ministry of Justice, App. 219, 220.

that blood and semen samples could not be tested.  Sidali was released.

In Turkey, verdicts of acquittal may be appealed to the Supreme Court of Appeals.  TCCP Art. 289.  An appeal may be taken only for the reason that the judgment is contrary to law, TCCP Art. 307, and the Court of Appeals may reverse the judgment on the points where the law is violated.  TCCP Art. 321.  The Court of Appeals may find a "violation of the law" based on the facts determined as the basis for judgment.  Id.[3]  If it votes to reverse the judgment of the trial court, the Court of Appeals forwards the file to the originating court for a review of its own decision and for a new judgment.  TCCP Art. 322.

In this case, the Mersin Prosecutor and the victim's mother (as intervenor) appealed the trial court's judgment of acquittal.  In February 1973, the appeal was heard and decided by the First Criminal Panel of the Supreme Court of Appeals, which found that the judgment of acquittal was based on evidence which was "not in line with the existing quality of evidence."  The court also found that the majority did not disprove the evidence raised by the dissenting opinion.  Because the trial court's decision was therefore "contrary to law," the court reversed the judgment of acquittal.  TCCP Art. 321.

Thus the First High Criminal Court of Mersin was required to conduct a retrial.  A panel of three judges, with

---

3.  "A judgment which does not include justification for the result reached" is also considered an absolute violation of law.  TCCP Art. 308(7).

only the Chairman the same as at the first trial, reviewed the evidence. On July 16, 1976, the panel voted unanimously to acquit Sidali. The court reasoned that Sidali's body did not show any signs of a struggle, that it would not have been impossible for an intruder to have entered Sidali's home, that Sidali had no motive to kill Dursun, and that Sidali would have destroyed incriminating evidence. The court therefore "persisted" in the original judgment; that is, the court adhered to its earlier judgment of acquittal despite the prior opinion from the Court of Appeals.

Decisions to persist are reviewed by the General Board of the Criminal Panels of the Supreme Court of Appeals ("General Board"), which is composed of the Heads of Departments and members of the Criminal Panels of the Court of Appeals. On December 13, 1976, the General Board voted 24 to 8 that the reasons cited by the trial court to persist in the previous judgment were not sufficient. The General Board wrote that "it was clearly seen from the sufficient and convincing evidence that the accused [Sidali] transgressed the fifteen year old victim's virginity . . . and murdered the victim with his wife's belt." The General Board "annull[ed] the judgment for the acquittal of the accused."

Sidali applied for a passport on or about December 17, 1976. Believing that Sidali was acquitted, the Turkish government gave Sidali clearance, and Sidali received his passport on December 20, 1976. Sidali applied for a visa to come to the United States and left Turkey on or about December 31,

1976.  Sidali has lived openly in the United States since January 2, 1977, and he became a permanent resident of the United States on September 17, 1990.

## II.

The right of a foreign sovereign to demand and obtain extradition of an accused criminal is created by treaty, and in the absence of a treaty the government has no duty to surrender a fugitive to a foreign government.  Factor v. Laubenheimer, 290 U.S. 276, 287, 54 S.Ct. 191, 193 (1933); see also Quinn v. Robinson, 783 F.2d 776, 782 (9th Cir.), cert. denied, 479 U.S. 882, 107 S.Ct. 271 (1986).

The extradition treaty between the United States and Turkey provides for the reciprocal extradition of persons, found within the territory of one of the nations, who have been accused or convicted of certain criminal offenses committed within the jurisdiction of the other nation.  Treaty on Extradition and Mutual Assistance in Criminal Matters, June 7, 1979, U.S.-Turkey, Article 2, T.I.A.S. No. 9891.  If the United States agrees to seek the extradition of an individual pursuant to the request of a foreign government, the United States files an extradition complaint in an appropriate court charging an individual with committing an extraditable offense pursuant to the relevant extradition treaty.  18 U.S.C. § 3184.

## A.

7

On February 9, 1982, Turkey made a request to the United States for Sidali's extradition. For over a decade the United States failed to take any action to extradite Sidali.[4]

On October 31, 1994, however, the United States filed an extradition complaint on behalf of Turkey in the District of New Jersey charging Sidali with rape and murder, which are extraditable offenses in the extradition treaty between the United States and Turkey. The magistrate judge issued a warrant for Sidali's arrest, and Sidali was arrested on November 16, 1994.

Because the power to extradite derives from the President's power to conduct foreign affairs, extradition is an executive, not a judicial, function. Martin v. Warden, Atlanta Pen, 993 F.2d 824, 828 (11th Cir. 1993); see generally U.S. Const. art. II, § 2, cl. 2. Thus, "the judiciary has no greater role than that mandated by the Constitution, or granted to the judiciary by Congress." Austin v. Healey, 5 F.3d 598, 600 (2d Cir. 1993), cert. denied, 510 U.S. 1165, 114 S.Ct. 1192 (1994).

In response to a complaint seeking extradition, the court conducts a limited inquiry. See 18 U.S.C. §§ 3181–95. The purpose of the proceeding is to determine whether an individual who has been arrested in the United States, pursuant to a complaint filed on behalf of a foreign government, is subject to surrender to the government of the requesting country. Charlton v. Kelly, 229 U.S. 447, 460, 33 S.Ct. 945, 949 (1913). The court

4. Sidali asserts that the United States took action only after Turkey extradited a narcotics trafficker to the United States.

8

conducts a hearing to determine whether there is "evidence sufficient to sustain the charge [against the defendant] under the provisions of the proper treaty or convention."  18 U.S.C. § 3184.  In other words, the court determines whether there is probable cause to believe that the defendant is guilty of the crimes charged.  If the evidence is sufficient, the court makes a finding of extraditability and certifies the case to the Secretary of State.  Id.; see also Martin, 993 F.2d at 828.

A magistrate judge[5] held Sidali's extradition hearing on September 20, 1995.[6]  Two days later, the magistrate judge found Sidali extraditable and certified his case to the Secretary of State.  Matter of Extradition of Sidali, 899 F. Supp. 1342, 1347 (D.N.J. 1995).  In addition to other findings not before us on appeal, the magistrate judge found that (1) the General Board convicted Sidali of rape and murder, and (2) the United States established probable cause to believe that Sidali committed the crimes.  According to the magistrate judge, either finding, standing alone, was sufficient to support his finding of probable cause under 18 U.S.C. § 3184.  Sidali moved for reconsideration on October 3, 1995, but his motion was denied.

B.

---

5.  18 U.S.C. § 3184 permits a magistrate judge to conduct extradition proceedings if authorized to do so by "a court of the United States."  Local Rule 40(B)(12) provides this authorization in the District of New Jersey.

6.  The September 20 hearing followed a complicated procedural history that is detailed in Matter of Extradition of Sidali, 899 F. Supp. 1342, 1345–46 (D.N.J. 1995).

Because extradition orders do not constitute "final decisions of a district court," they cannot be appealed under 28 U.S.C. § 1291. See Collins v. Miller, 252 U.S. 364, 369, 40 S.Ct. 347, 349 (1920). Rather, an individual seeking to challenge a magistrate judge's extradition order must pursue a writ of habeas corpus.

On August 24, 1995, while Sidali's extradition proceedings were pending, Sidali filed an application for naturalization with the Immigration and Naturalization Service, requesting expedited consideration. On November 6, 1995, Sidali filed a complaint in the United States District Court for the District of New Jersey in which he challenged INS' failure to act on his application for naturalization. On December 6, 1995, while Sidali's complaint was pending before the district court, the Secretary of State issued a warrant for Sidali's surrender to Turkey.[7]

On December 12, 1995, Sidali amended his complaint by adding two counts seeking habeas corpus review of the magistrate

---

7. After the courts have completed their limited inquiry, the Secretary of State conducts an independent review of the case to determine whether to issue a warrant of surrender. 18 U.S.C. § 3186. The Secretary exercises broad discretion and may properly consider factors affecting both the individual defendant as well as foreign relations--factors that may be beyond the scope of the magistrate judge's review. The Secretary of State's decision is not generally reviewable by the courts. Martin, 993 F.2d at 829; Escobedo v. United States, 623 F.2d 1098, 1105 (5th Cir.), cert. denied, 449 U.S. 1036, 101 S.Ct. 612 (1980).
To the extent that Sidali contends that we should affirm the judgment of the district court on humanitarian grounds unrelated to the finding of probable cause, we note that it is the function of the Secretary of State--not the courts--to determine whether extradition should be denied on humanitarian grounds. Ahmad v. Wigen, 910 F.2d 1063, 1067 (2d Cir. 1990).

10

judge's decision.  The district court had jurisdiction over Sidali's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

The scope of habeas corpus review of a magistrate judge's extradition order under a treaty with a foreign country is extremely limited.  "[H]abeas corpus is available only to inquire whether the magistrate [judge] had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty."  Fernandez v. Phillips, 268 U.S. 311, 312, 45 S.Ct. 541, 542 (1925); see also Smith v. United States, 82 F.3d 964, 965 (10th Cir. 1996); Ludecke v. U.S. Marshal, 15 F.3d 496, 497 (5th Cir. 1994); Austin, 5 F.3d at 600; Martin, 993 F.2d at 828; Brauch v. Raiche, 618 F.2d 843, 847 (1st Cir. 1980).

In his request for habeas corpus relief, Sidali did not challenge the magistrate judge's jurisdiction, and he conceded that the offenses charged were within the applicable treaty. Instead, Sidali argued that there was no evidence warranting the finding that there was reasonable ground to believe him guilty of the rape and murder of Dursun.  In other words, Sidali claimed that there was no evidence supporting a finding of probable cause.

On January 31, 1996, the district court granted Sidali's petition for habeas corpus relief.  914 F. Supp. 1104

11

(D.N.J. 1996).[8]  The district court found that the United States did not prove that Sidali was actually convicted of the rape and murder of Dursun.  Id. at 1112.  The court also found that there was no probable cause to believe that Sidali raped and murdered Dursun.  Id. at 1114.  Since the district court concluded that there was no evidence warranting the finding that there was reasonable ground to believe Sidali guilty, the district court granted Sidali's petition for a writ of habeas corpus.  This timely appeal followed.

III.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 2253, which provides that a final order issued by a district judge in a habeas corpus proceeding is subject to review by the United States Court of Appeals for the circuit in which that district court is situated.

On review, we focus our attention on the issue of probable cause; that is, whether there exists reasonable ground to believe the accused guilty of the crimes charged.  Here the United States attempts to establish probable cause in two ways. First, the United States argues that Sidali was actually convicted of the rape and murder of Dursun and that the conviction is sufficient proof that probable cause exists. Second, the United States contends that the magistrate judge's

_____

8.  The district court also dismissed the counts relating to the INS, 914 F. Supp. at 1114–15 n.11.  Sidali has not appealed that part of the district court's order.

12

finding of probable cause is supported by competent evidence of record.

A.

The United States contends, and Sidali does not dispute, that a foreign conviction obtained after a trial at which the accused is present is sufficient to support a finding of probable cause for the purposes of extradition.  See Spatola v. United States, 925 F.2d 615, 618 (2d Cir. 1991) ("To hold that such convictions do not constitute probable cause in the United States would require United States judicial officers to review trial records and, consequently, substitute their judgment for that of foreign judges and juries.  Such an inquiry would be inconsistent with principles of comity."); Restatement (Third) of the Foreign Relations Law of the United States § 476 comment b (1987) ("With respect to persons whose extradition is sought after conviction in the requesting state, the requirement [of probable cause] is met by proof of the judgment of conviction and, where appropriate, of sentence."); see also Mosley v. Wilson, ___ F.3d ___, 1996 WL 709746, at *5 (3d Cir. Dec. 11, 1996) (conviction that has not been reversed ordinarily precludes finding of lack of probable cause for underlying proceeding).

At issue, then, is whether the General Board convicted Sidali of rape and murder.  It is apparent that the General Board annulled the trial court's second judgment of acquittal, found that Sidali raped and murdered Dursun, and remanded the case to the trial court.  As Sidali argues, however, the General Board

13

never explicitly stated that Sidali was actually "convicted" or "guilty." We must therefore decide whether the General Board remanded the case back to the trial court (1) for a third trial on the issue of guilt or (2) simply to impose sentence. If the judgment of the General Board constituted a conviction under Turkish law, and if the case was remanded to the trial court for sentencing only, then we must reverse the judgment of the district court.

Our analysis requires us to decide issues of Turkish criminal law and procedure. The determination of foreign law in the federal courts is a question of law. Fed.R.Civ.P. 44.1; Grupo Protexa v. All American Marine Slip, 20 F.3d 1224, 1239 (3d Cir.), cert. denied, ___ U.S. ___, 115 S.Ct. 481 (1994). Consequently, we exercise plenary review over the district court's interpretation of relevant Turkish law. Id.; Mobile Marine Sales, Ltd. v. M/V Prodromos, 776 F.2d 85, 89 (3d Cir. 1985).

Our decision turns on whether the Turkish trial court was bound by the General Board's determination of guilt. If the trial court could have revisited the issue of Sidali's guilt in a third evidentiary trial, we would agree with Sidali that the General Board did not convict Sidali. The Turkish Code of Criminal Procedure makes clear, however, that the General Board's determination of guilt was final and binding. TCCP Article 326 provides:

> The courts have the right to insist on their first judgment when their judgment is reversed by the Court of Appeal, but they are obliged thereafter to abide by decisions given by the

General Criminal Board of the Court of
Appeal.

Thus, the Court of Appeal did not convict Sidali when it reversed the trial court's <u>first</u> judgment; on remand, the trial court could have insisted (and did insist) on its judgment of acquittal. In contrast, the trial court did not have discretion to insist on its <u>second</u> judgment when that judgment was reversed by the General Board. Decisions of the General Board are therefore final. When the General Board voted to annul the trial court's second acquittal, it did not send the case back for a third trial; instead, its decision on the issue of guilt was final and the case was remanded for sentencing only. In other words, the decision of the General Board constituted a conviction under Turkish law.

Sidali asserts that the General Board's failure to use the word "conviction" precludes us from determining that Sidali was convicted. We disagree. The General Board's statements were clear and unequivocal. While we acknowledge that inclusion of the word "conviction" in the General Board's decision would have simplified our analysis, we do not believe that the word "conviction" is necessary to establish the existence of a conviction under Turkish law. It is clear that the trial court could not disagree with the General Board's finding of guilt.

Our interpretation of the decision of the General Board finds support in documents submitted by the parties.[9] In a

9. When determining questions of foreign law, we may consider "any relevant material or source, including testimony, whether or

15

diplomatic note dated February 17, 1995, the Embassy of Turkey

explained:

Pursuant to the laws of the Republic of Turkey, Mehmet
        Semih Sidali has been convicted by the
        General Board of the Supreme Court of
        Appeals . . . .  Since the highest Turkish
        criminal appellate court has ruled in this
        matter, there is no appeal from that
        decision.  Mr. Sidali will not be entitled to
        a new trial . . . .

Diplomatic Note from Turkish Embassy (Feb. 17, 1995), App. 208.

The Embassy continued:

Under this Article [326], the trial court cannot set
        aside or ignore the ruling of the General
        Board.  The trial court cannot reopen the
        case to hear new evidence.  It must follow
        the General Board's decision without
        question.  Therefore, upon Mr. Sidali's
        return, the trial court will fix the duration
        of the sentence only.

Id.[10]  Likewise, the Mersin Prosecutor stated that the General

Board's decision was

(..continued)
not submitted by a party or admissible under the Federal Rules of
Evidence."  Fed.R.Civ.P. 44.1; Grand Entertainment Group, Ltd. v.
Star Media Sales, Inc., 988 F.2d 476, 488 (3d Cir. 1993).  We may
conduct our own research and are not confined to information
available to or considered by the district court.  Grupo Protexa,
20 F.3d at 1239; Mobile Marine Sales, Ltd., 776 F.2d at 89;
Kalmich v. Bruno, 553 F.2d 549, 552 (7th Cir.), cert. denied, 434
U.S. 940, 98 S.Ct. 432 (1977); see also Fed.R.Civ.P. 44.1
advisory committee's note ("[The court] may engage in its own
research and consider any relevant material thus found.").

10.  The district court stated that the diplomatic note "should
not have been admitted into evidence" and that the absence of the
author's signature and qualifications rendered the document
virtually irrelevant.  914 F. Supp. at 1111.  Initially, we note
that admissibility is not an issue, since we may consider
inadmissible material when deciding questions of foreign law.
Fed.R.Civ.P. 44.1.  In addition, the fact that the note was
submitted under seal of the Turkish Embassy and was presented to
the court under oath of a U.S. Attorney lessens any concern we
may have about the absence of a signature.

16

final and binding . . . . The judgment is final and absolute, and the trial corut [sic] has begun retrying the matter for determining the amount of punishment to be imposed to the accused; and in the meantime for the accused who was found conclusively guilty, Mehmet Semih Sidali, was issued a warrant of arrest in absentee.

Supplemental Request for Extradition (Sept. 25, 1992), App. 65, 70-71.

In an Addendum Request of Extradition, the Mersin Prosecutor stated that Sidali had "been pronounced decisively guilty." Addendum Request of Extradition (Sept. 25, 1992), App. 192, 198-99; see also Extradition Letter dated March 31, 1983, App. 15 (Sidali "was found guilty"); Ministry of Foreign Affairs Memorandum dated March 5, 1993, App. 179, 180-81 (Sidali's judgment of acquittal "was reversed and he was convicted"); Extradition Letter dated November 1, 1985, App. 48, 49 ("this verdict is final and binding under the existing Turkish legal system"). According to the General Director of International Law and Foreign Relations of the Turkish Ministry of Justice, the decision of the General Board "is binding, meaning that the issue [of guilt] cannot be further discussed . . . . [T]he guilt of the defendant can no longer be debated." Aydin Aff., App. 219, 225.

These writings convey a clear message: Sidali was found guilty by the General Board and the Turkish trial court was not permitted to hold otherwise on remand. We find these writings to be persuasive, and they support our conclusion that Sidali was convicted of the rape and murder of Dursun.

17

The district court did not find these writings to be persuasive because some documents stated that Sidali should be returned to Turkey for his "trial" and that Sidali was "charged" and "accused" of the crimes. 914 F. Supp. at 1111-12. Under Turkish law, however, the "trial" has not been completed because Sidali was never sentenced. Aydin Aff., App. 219, 225-26. The word "trial" used in this sense described the remaining sentencing proceedings. The Attorney General of Mersin explained:

> The retrial of the accused after having been acquitted two times, does not mean "to be tried for a second time". We have explained . . . this General Board examined the file and pronounc[ed] with overwhelming majority that the present evidences cause the conviction, so the trial continues . . . .

Statement of the Attorney General of Mersin (May 26, 1993), App. 184, 185-86. The other evidence submitted by the United States supports this interpretation. We believe that the use of the word "trial" in this context does not mean that Sidali will receive a new evidentiary trial to determine whether he raped and killed Dursun. Instead, we are satisfied that Sidali has been conclusively pronounced guilty and that his upcoming "trial" will be for the purposes of sentencing only.[11]

---

11. The use of the words "charged" and "accused" likewise do not persuade us that Sidali was not convicted. See, e.g., Supplemental Request for Extradition (Sept. 25, 1992), App. 65, 70-71 ("the accused . . . was found conclusively guilty"); Declaration of Thomas A. Johnson, App. 312 (explaining that use of word "charges" in certain documents was not intended to imply absence of conviction).

18

In addition to expressing concern about the words "trial," "charged," and "accused," the district court observed that some of the Turkish documents suggest that Sidali's guilt has not been conclusively determined. See, e.g., Statement of the Attorney General of Mersin (May 26, 1993), App. 184, 198 ("[T]he Trial Court was [to] begin to try the accused for the third time."). While we acknowledge the ambiguities in the record, we are ultimately persuaded that the General Board convicted Sidali.

As the magistrate judge correctly concluded, evidence of Sidali's conviction, obtained after a trial at which Sidali was present, is sufficient to support a finding of probable cause. We hold that the conviction of Sidali by the General Board establishes reasonable grounds to believe that Sidali is guilty of the crimes charged.

B.

Our conclusion that the General Board convicted Sidali of rape and murder is the first of two independent grounds for reversing the judgment of the district court. In addition to the conviction, which is per se probable cause, competent evidence also exists in the record to support the magistrate judge's conclusion that probable cause exists to believe that Sidali is guilty of the rape and murder of Dursun.

We note that the probable cause standard applicable in extradition proceedings is identical to that used by courts in federal preliminary hearings. See Sindona v. Grant, 619 F.2d

19

167, 175 (2d Cir. 1980); Castro Bobadilla v. Reno, 826 F. Supp. 1428, 1433 (S.D. Fla. 1993), aff'd, 28 F.3d 116 (11th Cir. 1994). The burden of the government is to offer evidence that "would support a reasonable belief that [the defendant] was guilty of the crime charged." Ahmad v. Wigen, 910 F.2d 1063, 1066 (2d Cir. 1990). The probable cause standard applicable in extradition proceedings has been described as "evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." United States v. Wiebe, 733 F.2d 549, 553 (8th Cir. 1984) (quoting Coleman v. Burnett, 477 F.2d 1187, 1202 (D.C. Cir. 1973)).

The role of the magistrate judge in an extradition proceeding is, therefore, "to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction." Peters v. Egnor, 888 F.2d 713, 717 (10th Cir. 1989) (quoting Collins v. Loisel, 259 U.S. 309, 316, 42 S.Ct. 469, 472 (1922)). As we observed almost seventy years ago:

> It is not necessary in extradition proceedings that the evidence against the respondent be such as to convince the committing judge or magistrate of his guilt beyond a reasonable doubt, but only such as to afford reasonable ground to believe that the accused is guilty of the offense charged.

United States ex rel. Lo Pizzo v. Mathues, 36 F.2d 565, 568 (3d Cir. 1929).

Here the magistrate judge found probable cause for extradition. We must uphold the magistrate judge's probable cause finding if there is any competent evidence in the record to

20

support it.  Then v. Melendez, 92 F.3d 851, 854 (9th Cir. 1996); Bovio v. United States, 989 F.2d 255, 258 (7th Cir. 1993); see also Ludecke, 15 F.3d at 497 (appellate court must determine whether there is "any competent evidence tending to show probable cause"); Peters, 888 F.2d at 717 (habeas corpus appellate review turns on whether there is "any evidence of probable cause" supporting magistrate judge's finding).

Upon careful review of the record, we find that competent evidence of record indeed supports the magistrate judge's finding of probable cause.

Initially, the evidence suggests that the crimes were committed in Sidali's home at a time when Sidali was the only male resident in the home.  The record includes the following evidence that tends to show that it would have been impossible (or at least very unlikely) for an intruder to have committed the crimes: (1) the family's loud and hostile attack dog guarded the premises throughout the night; (2) the dog, who barked viciously at intruders, barked once early in the evening before the murder, but did not bark again that night;[12] (3) the property was secured by a wall with a bolted gate, barred windows, and locked doors; (4) while there were signs that one door was tampered with, the investigators stated that the evidence of tampering was not

12.  While one witness did testify that she heard "a dog" barking that night, there is no testimony that the barking dog was Sidali's dog.  In addition, when Sidali's dog barked earlier in the evening, the barking prompted the residents to look around the premises and call to Dursun.  The barking later in the evening did not prompt any concern.  These facts support the United States' argument that Sidali's dog did not challenge an intruder on the night of the murder.

recent; and (5) investigators stated that the door was locked and did not appear to have been forced open.

The district court placed great emphasis on the notion that "mere presence at the scene of a crime does not constitute probable cause." 914 F. Supp. at 1114. While this statement may be true, the United States established more than mere presence in this case. The evidence suggests that Sidali was the only male resident present in the home at the time of the murder and that there were no intruders on the night of the murder. Thus, in addition to presence and opportunity, the evidence suggests that no one but Sidali could have committed the crimes. This factor distinguishes this case from those cited by Sidali. We believe that a person of ordinary prudence and caution could conscientiously entertain a reasonable belief of Sidali's guilt.

In addition to evidence that Sidali was the only person with an opportunity to commit the crimes, additional evidence was offered that supports a finding of probable cause. For example: (1) blood was found on Sidali's pajamas and on a cloth in the garbage; (2) Dursun was strangled with a belt belonging to Sidali's wife; (3) Sidali stated that someone stole his key, but money located near the key was not disturbed; and (4) Sidali appeared "in a tousled-up state" when the investigators arrived, disturbing the crime scene by "attempt[ing] to upturn the objects in the wardrobes and drawers." Verdict of the Supreme Court, App. 55, 56.

The evidence tying Sidali to the rape and murder of Dursun may be less than overwhelming. The district court's

22

comments regarding the adequacy of the autopsy and investigation are well-taken. Turkey was not required, however, to conduct a perfect investigation, and it was not required to present its entire case in this country. The evidence presented need only "support a reasonable belief that [Sidali] was guilty of the crime[s] charged." Austin, 5 F.3d at 605 (quoting Ahmad, 910 F.2d at 1066). The evidence presented to the magistrate judge sufficed for this limited purpose.

The magistrate judge reviewed the evidence and determined that probable cause exists to believe that Sidali was guilty of the crimes charged. Because competent evidence in the record supports the magistrate judge's finding of probable cause, our limited scope of review prevents us from contradicting that determination. Austin, 5 F.3d at 605 (citing Quinn, 783 F.2d at 815).

IV.

The General Board convicted Sidali of the rape and murder of Dursun, and that conviction is sufficient evidence of probable cause. Independent of the conviction, competent evidence of record supports the magistrate judge's determination that probable cause exists to believe that Sidali is guilty of the crimes. For both of the foregoing independent reasons, we will reverse the judgment of the district court and direct the court to deny Sidali's petition for a writ of habeas corpus.

23